## Palmer Corporation v. Collins.

(Decided June 1, 1926.)

### Appeal from Warren Circuit Court.

1. Mines and Minerals—Owner of Part of Oil and Gas Lease Held Entitled to Damages from Owner of Another Part on Adjoining Land, whose Failure to Plug Abandoned Wells Caused Water to Get in Plaintiff's Oil (Ky. Stats., Sections 466, 3911, 3912, 3914, 3914a).—Owner of part of oil and gas lease held entitled to damages from adjoining owner, whose failure to plug abandoned wells in manner prescribed by Ky. Stats., section 3914a, which

substituted new method for that set out in section 3911, caused water to get in plaintiff's oil, since right to recover under section 466 for damage sustained by violation of statute is not taken away by sections 3912, 3914, providing for particular penalty and recovery for violation of section 3911.

2. Statutes—Statutes Relative to Plugging Abandoned Oil and Gas Wells and Statute Providing for Recovery for Damages Resulting from Violation of Any Statute Should be Read Together (Ky. Stats., Sections 466, 3911, 3912, 3914, 3914a).—Ky. Stats., sections 3911, 3912, 3914 and 3914a, relative to plugging abandoned oil and gas wells, and section 466, providing for recovery for damage resulting from violation of any statute, should be read together, since they are all parts of one revision.

3. Mines and Minerals—Owner of Oil and Gas Wells Held Not Chargeable with Negligence or Laches in Failing to Plug Wells on Adjoining Land.—Owner of oil and gas wells held not chargeable with negligence or laches in failing to plug wells on adjoining land after owner of wells on such land agreed to do it at once.

4. Evidence.—It is well known that water is heavier than oil, and will displace oil when it gets in an oil sand.

5. Evidence—It is Well Known that there is, Above Oil Sand, a Stratum of Rock which is Impervious to Water, and Keeps Water from Getting into Oil Sand Until Well is Put Down.—It is well known that there is, above oil sand, a stratum of rock which is impervious to water and keeps water from getting into oil sand until well is put down.

6. Mines and Minerals—Evidence Held to Show that Water Appearing in Oil Well Came from Abandoned Wells 260 Feet Away, which had Not Been Plugged.—Evidence held to show that water appearing in oil well came from abandoned wells 260 feet away, which had not been plugged, where water appeared only while such other wells were abandoned and not plugged, notwithstanding that abandoned wells were on lower ground.

7. Evidence—Admission of Testimony of Oil Experts that in Their Judgment Water Appearing in Oil from Certain Well Came From Certain Other Abandoned Wells Held Not Substantial Error.— Admission of testimony of oil experts that in their judgment water appearing in oil from certain well came from certain other abandoned wells held not substantial error, since they had better means of judging such things than jury.

8. Appeal and Error—Where there was no Dispute About Facts, which Were Sufficient to Show that Water in Certain Oil Came from Certain Abandoned Wells, Expert Testimony to that Effect Held Not Prejudicial.—Where there was no dispute about facts, which were sufficient to show that water in certain oil came from certain abandoned wells, expert testimony to that effect held not prejudicial.

9. Appeal and Error—Failure to Exclude Statements Made as Facts on Direct Examination, but Proved on Cross-Examination to be

Hearsay, Though Error, Held Not Prejudicial.—Failure to exclude statements made as facts on direct examination, but proved on cross-examination to be hearsay, though error, held not prejudicial, where such facts were also proved by uncontradicted testimony of other witnesses.

10. Evidence.—It is well known that there are dips in the strata of the earth.

11. Mines and Minerals.—While there is no property in oil in the earth not reduced to possession, owner of oil well has property in such well.

CHANEY & DIXON, and L. B. FINN, for appellant.

RODES & HARLIN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Affirming.

About August, 1922, Fred Collins became the owner of forty acres of the Harrison-Shannon oil and gas lease in Warren county. The Palmer Corporation owned fifty acres of the same lease adjoining the forty acres owned, by Collins. There were ten producing wells on Collins' forty acres and a number of wells on the other fifty acres. Wells had been put down within 130 feet of the division line between them. In August, 1923, the Palmer Corporation abandoned two of its wells, which had been drilled within 130 feet of the dividing line. Up to this time Collins had had no trouble with water in his wells. Soon after this he noticed water in his tanks in which the oil was pumped, and in October went to look at the two abandoned wells. He found them open and with water in them. He promptly notified the superintendent of the Palmer Corporation, who agreed to at once plug up the wells, but he had difficulty in getting the necessary machinery and the wells were not plugged for a month or more. Collins had great trouble in getting the water out of his wells and brought this suit against the Palmer Corporation to recover damages. On the trial of the case there was a verdict and judgment for him for $1,600.00. The defendant appeals.

Section 3911, Kentucky Statutes, provides:

"That whenever any well shall have been put down for the purpose of drilling, or exploring for oil, gas, or salt water, upon abandoning or ceasing to operate the same, the person or corporation in possession as aforesaid shall, for the purpose of ex-

cluding all fresh water from gas-bearing rock, and before drawing the casing, fill up the well with sand or rock sediment to a depth of at least twenty feet above the rock which holds the oil, gas or salt water, and drive a round, seasoned wooden plug, at least twenty feet above the rock which holds the oil, gas or salt water, and drive a round, seasoned wooden plug, at least three feet in length, equal in diameter to the diameter of the well below the casing, to a point at least five feet below the bottom of the casing; and immediately after drawing the casing, shall drive a round, seasoned wooden plug, at a point just below where the lower end of the casing rests, which plug shall be at least three feet in length, tapering in form, and of the same diameter, at the distance of eighteen inches from the smaller end, as the diameter of the hole below the point at which it is to be driven. After the plug has been properly driven, there shall be filled on top of the same sand or rock sediment to the depth of at least five feet.''

By section 3912, Kentucky Statutes, a fine of $100.00 is imposed for each violation of the statute and a further penalty of $100.00 for each thirty days during which the violation shall continue. This section is a part of the act of May 14, 1892, but in March, 1906, the legislature made this provision on the subject:

''It shall be unlawful for any person or persons, corporations or companies to abandon any oil or gas wells, either dry or producing, in this Commonwealth, or to remove casings therefrom, whether same be either oil or gas, either producing or dry, or for any cause abandon said well or wells without first plugging same in a secure manner by placing a plug of pine, poplar or some other material which will prevent said well from becoming flooded, said plug to be placed above the oil-producing sand or sands, and filled in above for the distance of seven feet with sediment or clay and placing upon same another plug of similar material as that of the first and also placing about ten feet below the said casing another plug of like material as above referred to, seven feet of sediment or clay; and then another plug, all plugs to be securely driven in so that no water can pass the same, before the casing is removed.

"Any person or persons, corporations or companies refusing or failing to comply with the foregoing provisions as provided for in section 1 herein, shall, on conviction, be fined in any sum not less than hundred dollars ($100.00) or more than one thousand dollars ($1,000.00), in the discretion of the jury.

"All acts or parts of acts in conflict herewith are hereby repealed." Ky. Stats., section 3914a.

It could not have been the intention of the legislature to leave section 3911 in force, for plainly is was not intended that both methods of stopping a well should be followed, for both methods could not be used in the same well. The plain purpose of the act of 1906 was to substitute the method therein provided for the method provided by the former act. The act of 1906, therefore, regulates the way in which abandoned wells should be stopped. The act of 1892 also contains this provision, which is still in force:

"Whenever any person or corporation shall abandon any well, and shall fail to comply with section 3911, any person or corporation lawfully in possession of lands adjacent to or in the neighborhood of said well, may enter upon the land upon which said well is situated, and take possession of said well, and plug the same in the manner provided by section 3911, and may maintain a civil action in any court of this state against the owner or person abandoning said well, and every one of them, jointly and severally, to recover the cost thereof. This shall be in addition to the penalties provided by section 3912." Kentucky Statutes, section 3914.

It is earnestly insisted that the statute creates a right and provides a remedy for its violation and that the statutory remedy is exclusive. They have a similar statute in West Virginia and in answer to this contention under their statute the court said:

"We are unable to concur in this view. As to a right of action for damages, the statute is silent. It fails to deal with that subject at all. Failing to cover this feature of the subject-matter, it lacks comprehensiveness, one of the essentials of the application of the rule of construction invoked." Atkinson v. Va. Oil & Gas Co., 72 W. Va. 711.

Section 466, Kentucky Statutes, provides:

"A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed." Ky. Stats., section 466.

The power conferred by section 3914, Kentucky Statutes, to take possession of the well and plug it is only a power to stop future injuries. When the statute gave the adjoining owner this right it did not take from him the right to recover for the injury conferred by section 466, for under section 3914 he can only recover the cost of plugging the well. The sections are all parts of one revision and are to be read together. When so read there is nothing in section 3914 conflicting with section 466.

Collins is not chargeable with negligence or laches in failing to plug the wells himself when the Palmer Corporation agreed at once to do so. But it is earnestly insisted that there is no definite proof that the water in Collins' well was there by reason of the two abandoned wells of appellant. There is proof, however, that Collins had no trouble with the water until these wells were abandoned and that, after they were plugged and the water that had come into the oil sand was gotten out, the trouble ceased. There was also proof that when Collins examined the wells they were open and full of water. It is well known that water is heavier than oil and when it gets in an oil sand will displace the oil. It is also well known that there is above the oil sand a stratum of rock which is impervious to water and keeps the water from getting into the oil sand until a well is put down. When a well is put down it is necessary to case the well and drive the casing down tight into the tap rock or impervious stratum about the oil, so as to keep the water in the rocks above the tap rock from going down into the well. When the casing is withdrawn and the well is not plugged there is nothing to keep the water from going down into the oil. When the water promptly appeared in the oil and the open well was only 130 feet from the line and only 260 feet from the well on the opposite side there was sufficient evidence that the water came from the well when it was shown that after the well was plugged the trouble was removed.

There was no substantial error in allowing oil experts to testify that in their judgment this water came from these wells, for men of many years' experience in such business have better means of judging such things than a jury who have no experience in such matters. This evidence was not prejudicial in view of the fact that there was no dispute about the facts and these facts were sufficient without expert testimony.

It is objected that Collins in his testimony stated certain things as facts and that afterwards on his cross-examination it appeared that he made these statements not upon personal knowledge of the facts but upon hearsay. What he stated upon hearsay should have been excluded, but the facts were proved by the testimony of other witnesses, and there being no contrary testimony the defendant was not prejudiced by the failure of the court to exclude Collins' hearsay statement as to these facts.

There is no complaint of the instructions of the court to the jury or of the amount of the verdict if the plaintiff was entitled to recover, and on the whole case it cannot be said that the verdict is palpably against the evidence. It is earnestly insisted that Collins' forty acres is higher than appellant's fifty acres and that the water from these wells would flow on it rather than on him. But it is well known that there are dips in the strata of the earth. The fact is some of the water did flow on its fifty acres as well as on his forty acres. The wells were so close together that the water would reasonably spread in both directions to some of the wells. While appellant did introduce testimony showing that it plugged up the wells when they abandoned them in August, it is conceded that it did not then substantially comply with the statute, and it also appears that after this, being unable to pull the casing out, it shot the wells in order to get the casing out. This no doubt rendered the plugging it had done ineffective and brought about the condition which Collins found when he went to the wells early in October. On the whole case there is no error in the record to the prejudice of appellant's substantial rights.

While it is true that a man has no property in oil in the earth and not reduced to possession, the owner of an oil well has property in the well. The value of the well depends on the quantity of oil it produces. To destroy its production is to destroy property and when this

is done by failing to plug an abandoned well as provided by the statute (sec. 3914a) the owner under the statute (sec. 466) may recover the damages thereby sustained.

Judgment affirmed.