JOLDERSMA v. MUSKEGON DEVELOPMENT COMPANY.

1. Waters and Watercourses—Pollution of Subterranean Waters—Question for Jury—Evidence—Oil Wells—Celery Land.

In action for damages to plaintiffs' celery land alleged to be due to improper disposal of salt water in vicinity of defendant's oil well, located some 200 feet north of plaintiffs' boundary and 500 or 600 feet north of cultivated portion of plaintiffs' farm and over brow of a 50-foot hill, although plaintiffs' land is unquestionably unfit for cultivation because of presence of salt, evidence presented *held*, insufficient to present for jury question as to whether salt deposited on plaintiffs' land was due to a subterranean flow of percolating waters containing salt from defendant's sump, there being evidence of possible sources of pollution from other land adjoining that of plaintiffs as well as salt wells on plaintiffs' own farms.

2. Same — Geologist's Testimony — Course of Subterranean Waters—Conjecture.

In action for damages to celery land at south of 50-foot hill from disposal of salt water in vicinity of oil well north of brow of hill, geologist's testimony that on south side of hill the surface water flow was from north to south and that it was generally assumed that subterranean flow followed the course of surface waters but that there was no reliable source of information as to course of underground flow from near well in question would make a jury's finding that such waters took a southerly course result from conjecture.

3. Same—Pollution of Subterranean Waters—Stipulations—Conjecture.

A jury's finding in action for damages to plaintiffs' celery land that presence of salt on their land was due to improper disposal of salt from defendant's oil well on north side of 50-foot hill *held*, not permissible on record failing to show course of subterranean drainage on north side of hill, and containing stipu-

lation of plaintiffs' counsel that damages were sought solely
for pollution by defendant of the subterranean flow, since a
jury cannot be permitted to conjecture.

4. SAME—SALT—CELERY LAND—SEEPAGE—OIL WELL SUMP—HILLS—
BURDEN OF PROOF.
   The burden of proof of showing relation between presence of salt
   on plaintiffs' celery land and contents of sump near defend-
   ant's oil well some 600 feet distant and on opposite side of
   50-foot hill was not sustained by showing that defendant per-
   mitted salt water to seep into the ground and that salt ap-
   peared on plaintiffs' land.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted October 12, 1938. (Docket No. 69, Cal-
endar No. 40,031.) Decided November 10, 1938.

Case by Thomas and John Joldersma against
Muskegon Development Company, a Michigan cor-
poration, for damages for pollution of land by salt
water deposited on defendant's land and running
subterraneously to plaintiffs' land. Directed ver-
dict and judgment for defendant. Plaintiffs appeal.
Affirmed.

*Henry L. Wierengo*, for plaintiffs.

*C. N. Sessions*, for defendant.

CHANDLER, J. · Plaintiffs are the owners of a 10-
acre tract of land located in Muskegon county, upon
which they have been engaged in the production of
celery. Defendant owns and operates an oil well
located on land adjoining the northerly boundary of
the land owned by plaintiffs. Plaintiffs' declaration
alleges that defendant, in the operation of its oil
well, negligently caused large quantities of salt water
to be deposited upon the ground in the vicinity of
said well with the result that plaintiffs' water supply

has been rendered unfit for use and the farm unfit for the raising of celery plants. The trial court directed a verdict for defendant at the close of plaintiffs' proof and this appeal followed.

The tract of land in question is approximately 720 feet in length and is bounded on the west by a railroad right of way, on the east by farm land, and on the south by a channel estimated to be between 30 and 100 feet in width. The channel in question has no outlet, and is filled with refuse, oil, and salt water deposited by drainage from various oil wells.

To the north of plaintiffs' land is located a hill with an approximate elevation of 50 feet, at the foot of which are to be found springs which constitute plaintiffs' water supply and which drain into a series of ditches traversing the land from north to south, finally emptying into the channel hereinbefore mentioned. Defendant's oil well is situated north of the brow of the hill, some 500 or 600 feet north of the easterly half of the cultivated area of plaintiffs' farm, and some 200 feet north of plaintiffs' northerly boundary. Near the well, defendant has constructed a sump or pit into which the refuse or bottom sediment, including salt water, is deposited and allowed to seep into the land, which method of disposition was shown to be in accord with the regulations and recommendations of the department of conservation.

Plaintiffs had no trouble with salt deposits either upon the land or in their water supply until the spring of 1936, at which time it was noticed in the water from a spring located at the foot of the hill. In the spring of 1935, defendant had been requested by plaintiffs that the refuse from the operations of the oil well be piped to the drainage ditch located on the westerly edge of plaintiffs' property. Defend-

ant agreed to comply with the request, but apparently nothing was done until after the salt appeared of which plaintiffs complain.

It is clear that the presence of salt in the land and water supply has rendered plaintiffs' farm worthless for purposes of raising celery and that the condition progressed from the time the salt was first noticed in the spring of 1936.

In his opening statement, counsel for plaintiffs stipulated that the claim for damages was based upon an alleged pollution by defendant of the subterranean water flow which eventually deposited salt in plaintiffs' water supply and upon their land, and that it was not claimed that any damage had resulted from a flow of surface waters over the celery farm.

Without comment upon the question as to whether or not defendant has been shown guilty of actionable negligence, we are satisfied that plaintiffs have failed to produce sufficient evidence for the consideration of the jury upon which they might properly find that the salt deposited was due to a subterranean flow of percolating waters containing salt from defendant's sump.

The testimony reveals that four oil wells have been drilled in various places on plaintiffs' farm, two of which at least produced some salt water, and one of which is still being operated with a production of a small amount of salt water which is drained into one of the north and south ditches. The well last mentioned is located near plaintiffs' wash shed on the north end of the farm. The remaining three wells have not been operated for a considerable period of time. On the farm adjoining plaintiffs' easterly boundary are located two wells producing salt water which at one time was permitted to seep into

the earth, it being only recently piped to the channel at the south. In fact, it appears that possible sources of salt are to be found on all the land adjoining that owned by plaintiffs. From the record presented, it would be impossible to determine whether or not any of the wells mentioned, and other possible sources of salt, exclusive of the well operated by defendant, were responsible for the salt deposit which has resulted in plaintiffs' damage. To exclude these sources and plaintiffs' own well as a cause of the damage would be speculative upon the testimony produced. And it would be equally as conjectural to find defendant responsible for the condition existing.

A geologist produced by plaintiffs testified that drainage maps indicated the surface flow from the brow of the hill to be from the north to the south, from which it could be inferred that salt water flowing on the surface of the ground would eventually find its way to plaintiffs' land. However, there is no testimony to establish with any reasonable degree of accuracy the direction the subterranean percolating waters would take from the point at which defendant's sump is located so that the jury could properly be permitted to find that the brine from the sump was thus carried to plaintiffs' land. In addition to stating that the surface flow from the brow of the hill was from north to south, the geologist testified that it was generally assumed that the subterranean flow followed the course of the surface waters, but that he did not know the course of the underground flow at the point in question and that there was no reliable source of information from which the question could be determined. He further testified that although the course of the surface drainage from the brink of the hill to the south was ascertainable, it was impossible to tell the course

thereof from defendant's well to the brink of the hill. Therefore, even if we were to accept as clearly established that the subterranean flow followed the course of the surface waters, the record stands without testimony bearing upon the direction of the surface flow from the sump to the brow of the hill, leaving the action of the percolating waters north of the brow of the hill in total obscurity. To find that the said waters took a southerly course would be a result based solely upon conjecture.

Bearing in mind the location of defendant's well some 600 feet north of the cultivated portion of plaintiffs' farm and other surrounding circumstances, the stipulation of plaintiffs' counsel, and the lack of any testimony as to the course taken by the subterranean drainage, at least from the sump to the brow of the hill, it is apparent that the question of the relationship, if any, between the salt water deposited in the defendant's sump and that to be found upon plaintiffs' land becomes highly speculative. The jury cannot be permitted to conjecture. Their verdict must be based upon facts or inferences properly drawn therefrom, not upon suspicion.

It was incumbent upon plaintiffs to establish by some means a relationship between the contents of defendant's sump and their damage. The burden of proof was not met, in view of all the circumstances, by a simple showing that defendant permitted salt water to seep into the ground and that salt appeared at a distance of several hundred feet to the south. It was their burden to establish this relationship, not by a guess of the jury, but by the production of some competent testimony.

Judgment affirmed, with costs to defendant.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., did not sit.