CONTINENTAL OIL COMPANY *v.* HINTON

No. 43552 May 24, 1965 175 So. 2d 512

234

*William S. Mullins, III, Welch, Gibbes & Graves,*
Laurel; *Newt P. Harrison, Brunini, Everett, Grantham
& Quin,* Jackson, for appellant.

*Louie F. Ruffin,* Richton; *Thomas J. Riley,* Hatties-
burg, for appellee.

Inzer, J.

This is an appeal from the Circuit Court of Perry County, wherein appellee, Dewey Hinton, brought suit against appellant, Continental Oil Company, for the alleged pollution and destruction of his water well caused by the negligence of appellant. Appellee recovered a judgment of $2,000, and from this judgment this appeal is prosecuted.

Appellee charged in his declaration that in the month of February 1963 an agent of appellant approached him and wanted permission to do some seismograph work on his land. He first refused to grant such permission, but did grant it when the agent agreed that appellant would be responsible for any damage done to appellee's well or other property. He also charged that appellant drilled deep holes and exploded large charges of explosives near his well, and that immediately after such explosions his well ceased to furnish him an abundant supply of water that was clear, as it had done prior to the explosions. He charged that the water in the well became muddy, cloudy, filthy, useless for human consumption, and the well was rendered totally useless. He charged the destruction of the well was due to negligence of appellant's employees in exploding large charges of dynamite near his well. As a result of such negligence he had expended in excess of $500 to drill a new well, and loss of use of the old well from the time it was destroyed until a new one was completed caused him inconvenience, annoyance, expense and final loss. He demanded judgment in the amount of $3,000.

Appellant answered the declaration in due course and denied that its employees had been guilty of any negligence in and around the premises of appellee. It further denied that appellee's well furnished an abundant supply of clean, clear and sanitary water prior to its operations in the vicinity. Appellant admitted that its agent obtained permission to go on appellee's land, and

admitted that its agent told appellee that appellant would be liable for any damage that might occur as a result of its operations. Appellant denied that any damage was caused appellee's water well or any other property. It admitted that it had exploded a 20-pound charge of dynamite in a shot hole 650 feet or more from the well at a depth of 194 feet below the surface, but denied that this shot caused any damage or that it was an extremely large shot. Appellant denied that its action had damaged appellee in any way, and asked that the declaration be dismissed.

Appellant contends among other things that the trial court was in error in overruling appellant's motion for a directed verdict at the conclusion of all the evidence. We are of the opinion that this contention is well taken. The proof in this case shows that appellee is the owner of the tract of land in section 31, township 4 north, range 9 west, located in Perry County. In February 1963 appellant obtained permission from appellee to do some seismograph work on his property with the understanding that appellant would be responsible for any damage that it might cause to the property. Appellee specifically referred to his well, which was located in front of his home near the driveway. This well was 102 feet deep, and according to the testimony of appellee and his witnesses was a good well with plenty of water prior to this time. Appellant's seismic party went upon appellee's land and made two shots thereon. These are designated in the record as shot points 239 and 240. Shot point 239 was the nearest to the well and was about 650 feet southeast of the well. This is the shot complained of in this case. The proof shows that appellant exploded at this point a 20-pound charge of explosives 194 feet below the surface. Appellee and his witnesses testified that within a few days after the shot his well became muddy, the water level went down, and the water that could be drawn was not fit to use. None of the witnesses for appellee testified that the shot damaged

the well. They all said that prior to the shot the well was good, and that after the shot it was bad. The most that any of them could say was that they assumed that the shot damaged the well. Appellee did not testify that the shot damaged his well. Two water well drillers with long experience in that type of work testified for appellee, and neither testified that the shot damaged the well. They were not called upon to express an opinion as to whether a 20-pound charge exploded in a hole 194 feet deep at a distance of 650 feet from the well would damage the well. The proof further shows that appellee had another well drilled to a depth of 155 feet, and so far as the proof shows this is a good well. The record does not reflect why the well was drilled to this depth.

The witnesses for appellant established that the shot in question was made in the customary and usual manner, and nothing unusual occurred as a result of the explosion. Two expert witnesses testified for appellant, and they both testified that a 20-pound charge exploded at a point 650 feet from the well at a depth of 194 feet could not have caused any damage to the well. One of the experts was Mr. Joseph W. Lang, who is Director of the Water Resources Division of the United States Geological Survey. For the past thirty years he has been engaged in work relating to evaluation and development of adequate sources of water, and for the past eleven years has done this work in Mississippi. He testified that the Hattiesburg formation runs through Perry County, and this formation is the belt of sand, clays and silts intermixed. This formation crosses Mississippi from the Alabama Line, extending across Perry County in a southwestern direction and continuing to a point near Natchez. The formation is about 250 feet deep as it crosses appellee's property. Mr. Lang said that a well drilled 155 feet deep would be in this formation, as would a well 102 feet deep. This formation is merely

a container for water, and water moves very slowly in it. It moves from the northeast to the southwest. He was familiar with the tests that had been made by the Atomic Energy Commission in studying the ground waters of this formation. He had observed water wells, both deep and shallow, to see if there was any noticeable effect from blasts made in the ground. He described an experiment made in Lamar County where two shot points were made 1000 feet from a water well and a 400-pound charge exploded at each point. Instruments were placed in the water well to record the movement of the water, and after the shots were made they could detect no change in the water level or appearance of the water. He outlined some reasons why the water in appellee's well became muddy and the level lowered. It was his opinion, based on his knowledge and experience, that the shot complained of could not have caused any damage to appellee's well. The testimony of the other expert was to the same effect.

The burden of proof was upon appellee to prove that the shot complained of damaged his well. Under the facts of this case we do not think that the burden was upon appellee to prove that appellant was guilty of any negligence in making the shot, although he alleged such negligence in his declaration. This is true because appellant agreed that it would be responsible for any damage done appellee by virtue of shots made on his land. All appellee needed to establish was a causal connection between the shot and the alleged damage. We have considered the evidence in this case on behalf of appellee in its most favorable light, and all the reasonable inferences that may be drawn therefrom, and we find that the most that can be said of it is that it established a possibility that the shot caused the damage. In the recent case of Western Geophysical Company of America v. Vallace Martin, 253 Miss. 14, 174 So. 2d 706, Justice Brady, speaking

for the Court, discussed and distinguished the various cases that· we have decided which deal with damage to water wells alleged to have been caused by seismograph operations. In all these cases we have held that the burden of proof is upon the person claiming damage to prove a causal connection between the explosion and the damage. The testimony in this case at its best only establishes a possibility that the well could have been damaged by the explosion. We have held in many cases that the possibility that a cause will produce a certain result does not constitute substantial testimony upon which a verdict may be based.

We said in *Western Geophysical* that:

It is inescapable that appellee's case is predicated upon the relative coincidence of the two events, the shot being fired and the malfunctioning of the well, plus the assumption or inference that the former caused the latter. This inference is unnecessary because if the shot did cause the damage the appellee could have offered more direct proof thereof by a water well driller, and there are a great many in this state, by some employee or agent of the Oil and Gas Board, or by an explosive expert, as was done in the Brown and McCollum cases. This elementary requirement was pointed out in Masonite Corporation v. Hill, 170 Miss. 185, 154 So. 295 (1934).

This statement is fully applicable to the facts in the present case.

 It is our opinion that the present case is controlled by our decision in the above-mentioned case, and the authorities therein cited. We can think of no more fitting way to conclude than to repeat the conclusion in *Western Geophysical*: ·

In conclusion, this Court can neither ignore the time-honored maxim that a party seeking redress must show a causal connection between the wrongful act of the accused and the injury alleged to have been

sustained, nor accept as proof the assumption *post hoc ergo propter hoc* made by the appellee which hypothesis was completely eliminated and contradicted by the overwhelming proof offered by the appellant.

It follows as a matter of course, for the reasons stated, that this case should be reversed and judgment rendered here for appellant.

Reversed and judgment for appellant.

*Lee, C. J., and Rodgers, Jones and Patterson, JJ.,* concur.