WATSON et al., Respondents v. GREAT LAKES PIPELINE COMPANY et al., Appellants

(182 N.W.2d 314)

(File No. 10781. Opinion filed December 15, 1970)

**Milton Buechler,** Lennox, **George Weisensee,** Sioux Falls, for plaintiffs and respondents.

**Woods, Fuller, Shultz & Smith and Timothy J. Nimick and Davenport, Evans, Hurwitz & Smith and Robert Heege,** Sioux Falls, for defendants and appellants.

BIEGELMEIER, Judge.

Plaintiffs brought this action for damages to their real estate which was platted into lots near the city limits of Sioux Falls. Their claim was that defendants, in operating their pipeline and oil tank storage business near plaintiffs' premises, had negligently discharged petroleum products in such quantities as to constitute a public nuisance and as a result did contaminate and pollute the waters under plaintiffs' property. Trial to a jury resulted in a verdict for plaintiffs from which defendants appeal. Defendants' argument for reversal is based on the denial of motions for directed verdicts and judgment n.o.v.

The evidence, including an aerial photograph and plats, shows Watson's Subdivision to be about 1000 by 1200 feet. It was platted into 49 tracts which will be referred to as lots. The lots on the west side of the subdivision front on Marion Road with Lots 1 through 10 numbered from the north end to the south end with a railroad as the south boundary. Immediately abutting these, with no intervening alley, are Lots 11 through 20; the other lots, with streets and drives, make up the subdivision. A 60-foot right-of-way for an under-

ground pipeline ran from near the northeast corner diagonally across the subdivision to the southwest corner which defendants used to transport petroleum products to the pipeline terminal or tank farm which corners Watson's Subdivision on the west side of Marion Road and south of the railroad. On this are located many tanks, buildings and equipment to store its products and transfer them to large transport trucks.

Plaintiffs bought the 43-acre parcel in 1945 and built their house and drilled a well on the north Lot 1 in 1947. Over the next two or three years they sold several of the lots to the south fronting on Marion Road to persons who also built houses and drilled wells for water which they used for drinking and general household purposes. One owner had sufficient water from his well to irrigate his vegetable garden. The wells were from 25 to 48 feet deep. The terrain of the land was described as high at Lot 1 in the northwest corner and sloping down to the south and southeast; it was higher again in the northeast corner leaving a draw near the center sloping to the southeast.

Plaintiffs' evidence was that some petroleum products were spilled or discharged from the pipeline or loading operations at the tank terminal; some of these were run into a 25-foot pit; others were washed or permitted to escape from the tank farm premises through run-off pipes into the ditch along Marion Road and adjacent land; that no vegetation grew in the ditch and the soil on the east side of Marion Road across from the terminal ten feet down contained a black, oily substance in it. There was much evidence of the depth of the wells, the water levels, sand, rock and clay strata. Several owners of the lots in Watson's Subdivision testified that, commencing with Lot 9 in the southwest corner across Marion Road from and cornering defendants' tract in 1953, and then slowly over a period of years, north to Lot 1 in 1960, the water from their wells severally became polluted or contaminated with a substance that smelled and tasted like gasoline and became unfit for drinking. Eight wells had been sunk by homeowners on the several described lots.[1] In

---

1. Another well on southernmost Lot 10 was under a Conoco building.

1956 the first well on Lot 4 became contaminated or polluted with the gasoline smell and taste; in 1957 the owner dug a new one some distance northwest which produced potable water for a time, but six months later it also acquired the gasoline taint. There was evidence by the several residents and homeowners the water had a little color film on it, was obnoxious to taste and that a person could not drink it or brew coffee with it. Water for these purposes had to be obtained from town and taken to their homes in large plastic jugs. Defendant Great Lakes put a charcoal filter in the well of one owner, but it did not work for long after it was installed.

Defendants admit the evidence of plaintiffs was to the effect that there was some contamination to the wells on Lots 1 through 9 on the west side of the subdivision by a substance that smelled and tasted like gasoline. They then assert this odor and taste were of an unsaturated hydrocarbon nature and not from gasoline or petroleum products. To support this they cite the evidence of their witness Amstutz, a consulting engineer specializing in water pollution problems. He testified he visited the Watson home and found a hydrocarbon odor in the Watson water as well as in wells of houses nearby and took samples of the water for testing. He also gave an extended explanation of oils, gases, and saturated and unsaturated hydrocarbons; that gasoline, kerosene, fuel and diesel oil are made up from heavier or saturated hydrocarbons.

While plaintiffs' complaint alleged both negligence and nuisance, the parties have argued the appeal on the public nuisance theory. Our statutes provide:

> SDCL 21-10-1. "A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
>
> > (1) Annoys, injures, or endangers the comfort, repose, health, or safety of others;
> >
> > \*         \*         \*         \*
> >
> > (4) In any way renders other persons insecure in life, or in the use of property."

SDCL 21-10-3. "A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

In considering defendants' claim the evidence is insufficient to justify the jury verdict and ensuing judgment, we must view the record most favorably to the verdict. This includes the resolution of all conflicts in the evidence and reasonable inferences which may be drawn therefrom. Vander Vorste v. Northwestern National Bank, 81 S.D. 566, 138 N.W.2d 411; Northwestern Bell Telephone Co. v. Henry Carlson Co., 1969, 83 S.D. 664, 165 N.W.2d 346.[2] Defendants urge the evidence is insufficient to show causation of damage, if any, to Lots 11 through 49, claiming the only evidence of pollution was to Lots 1 through 9 not involved in this action.

■ Plaintiffs and defendants each drilled three "test" wells on six of the lots from 11 through 49 involved in this action. None of these six "test" wells showed any evidence of petroleum pollution. Defendants claiming that the only evidence of such pollution was to the wells on Lots 1 through 9, the evidence is thus insufficient to show the oil spillage proximately caused damage to Lots 11 through 49 included in this action. Plaintiffs, in answer, point out the "test" wells which were sunk were new wells which had never been pumped; that gradually, one by one, beginning with Lot 9 near the southwest corner of Watson's subdivision cornering defendants' tank farm, the wells became polluted only after months and years of pumping and from this argue the water in the same sand stratum shown to be in varying depths in some of the adjoining Lots 11 through 49 is polluted and pumping wells would show this in time. This, we believe, is an inference which the jury, as the trier of facts,

2. This generally accepted rule of review has been applied in many appeals involving pollution. Bumbarger v. Walker, 393 Pa. 143, 142 A.2d 171; Cities Service Oil Co. v. Merritt, Okl., 332 P.2d 677; Sunray Mid-Continent Oil Co. v. Tisdale, Okl., 366 P.2d 614; and Yommer v. McKenzie, Md., 257 A.2d 138.

could properly reach from the evidence. See Midwest Oil Co. v. Aberdeen, 69 S.D. 343, 351, 10 N.W.2d 701.

Contrary to defendants' version of the evidence, plaintiffs refer to the record as to the well on Lot 16, one of the lots included in this action. Considering that evidence in the light most favorable to plaintiffs, as the jury did, and to the verdict, as we must, it appears that the well on Lot 16 was down to this "sand and gravel bottom" and was contaminated (as one witness testified) as those in Lots 1 through 9 immediately west and adjacent to Lot 16.

On this question of causation, the court decisions on always different facts likewise differ. Whether there was causal connection between drying up of plaintiffs' springs and defendants' mining operations was before the court in Hornick v. Bethlehem Mines Corporation, 307 Pa. 264, 161 A. 75. Here, as in that appeal, the proof of plaintiffs' cause of action depends entirely upon circumstantial evidence, and whether plaintiffs were damaged by defendants' acts is entirely a matter of inference. The court wrote:

> "If the administration of justice had to depend on demonstration by absolute proof, there would be few issues open to litigation, for such proof is rarely obtainable outside the realm of science. When a finding is a reasonable inference from the facts and conditions directly proved, it must be classed as legal evidence and not as a mere conjecture, surmise, or guess. In Gray v. Com., 101 Pa. 380, 47 Am.Rep. 733, Justice Paxson said: 'We are not jurors, and are not called upon to weigh the evidence * * * further than to say * * whether there is sufficient evidence to submit to the jury upon a particular question of fact.' (Wigmore says * * *) 'The conclusions and tests of every day experience must constantly control the standards of legal logic.' "[3]

Declaring circumstantial evidence was legal evidence, the court held that according to the tests of everyday experience,

---

3. We said much the same in Weidner v. Lineback, 82 S.D. 8, 140 N.W.2d 597, hereafter cited and quoted.

the court was justified in submitting the question of causation to the jury and the verdict was based on inference fairly deduced from the circumstantial evidence. If it be said there was opinion evidence the springs dried up because of the mining operations, one engineer who so testified also said no one knows what caused it.

The Maryland Court of Appeals in Yommer v. McKenzie, 1969, Md. 257 A.2d 138, had before it an appeal having much in common with the record before us. Plaintiffs, alleging a nuisance, sued for and recovered damages to their well water claiming contamination from a 1000-gallon gasoline tank used in connection with defendants' filling station and sunk about 60 or 70 feet from plaintiffs' well. The error assigned was refusal to direct a verdict for defendants who argued there was no proof plaintiffs' well was contaminated by gasoline from their tank. As to this, the court said it appeared the tank was in place 20 years; that when it was removed there was evidence of seepage under it and dirt in the excavation smelled of gasoline; that the level of plaintiffs' well was below that of the tank and that the smell noticed in the water was caused by gasoline was sufficient proof that it was gasoline from defendants' tank.

Appellants cite several decisions where plaintiffs were denied relief for failure of proof that the contamination complained of was caused by defendant. From some of the opinions it is manifestly difficult to determine the exact fact situation. In Joldersma v. Muskegon Development Co., 286 Mich. 520, 282 N.W. 229, it appeared the salt water complained of was to be found on all the land adjoining plaintiff's tract and there was a hill between it and defendant's salt water sump. Western Geophysical Co. of America v. Martin, 253 Miss. 14, 174 So. 2d 706, denied recovery of damages claimed done to a well 180 feet deep by an explosion which it claimed damaged the well strainer at a depth of 55 feet in a stratum above the water-bearing sand away from and not in the path of the movement of the water; the court said the damage to the strainer was assumed as it had never been pulled; that the contradictory proof of defendant was overwhelming and the court would not take judicial knowledge

the explosion would cause damages 800 feet away. Another explosion damage to a well case, Continental Oil Co. v. Hinton 253 Miss. 233, 175 So.2d 512, quoted the same reasoning from the Martin opinion and found it controlling.

Recoveries were allowed in the following cases: Cities Service Gas Co. v. Eggers, 186 Okl. 466, 98 P.2d 1114, circumstantial evidence and permissible inferences sufficient proof that pollution of creek entered gravel stratum of plaintiff's well; Harper-Turner Oil Company v. Bridge, Okl., 311 P.2d 947, circumstantial evidence sufficient to submit to jury; Cities Service Oil Company v. Merritt, Okl., 332 P.2d 677, nuisance theory, evidence pollution is progressive; Sunray Mid-Continent Oil Co. v. Tisdale, Okl., 366 P.2d 614; Rusch v. Phillips Petroleum Co., 163 Kan. 11, 180 P.2d 270; Palmer Corporation v. Collins, 214 Ky. 838, 284 S.W. 95, distinguished in Wynn v. Wilson, 252 Ky. 352, 67 S.W.2d 483; Crawford v. Yeatts, Tex.Civ.App., 395 S.W.2d 413.

Evidence reasonably tending to prove essential facts, either directly or by permissible inference is sufficient to sustain a judgment and such essential facts may be proved by circumstantial evidence. Cities Service Gas Co. v. Eggers, supra. After establishing facts from which it could reasonably be inferred that defendants had polluted the water, the evidence need not exclude every other source of pollution. Rusch v. Phillips Petroleum Co., 163 Kan. 11, 180 P.2d 270; Cities Service Gas Co. v. Eggers, supra; and see Davidson v. Cooney, 259 Iowa 1278, 147 N.W.2d 819.

Neither was it necessary that there be a chemical analysis of the water to determine that it was polluted by gasoline or oil. There was ample evidence that it had the odor of and tasted of gasoline. This was sufficient. Rusch v. Phillips Petroleum Co., supra; Shaw v. Puleo, 1964, Fla., 159 So.2d 641; Alton Box Board Co. v. Pantya, 1970, Fla., 236 So.2d 452. The evidence of lay witnesses and opinion expert evidence was voluminous, but was advisory only and not binding on the jury. It was to be accepted or rejected as it appealed to the judgment and conscience of the trier of facts 32 C.J.S. Evidence § 569 (1).

Defendants urge that if there are several possible causes no recovery may be had. In Parham v. Dell Rapids Township, 80 S.D. 281, 122 N.W.2d 548, the court modified Erickson v. Todd, 62 S.D. 280, 252 N.W. 879, and held the criminal law rule of proof by circumstantial evidence had no application to civil actions. The court said "It is enough that a plaintiff in a civil action prove mere preponderance of probability". See Weidner v. Lineback, 82 S.D. 8, 140 N.W.2d 597. Defendants then argue their version of the evidence that the lagoon maintained by Greenlee Packing Company, the septic tank of plaintiffs or a large landfill "in the vicinity" could have caused the odor and contamination. However, defendants' testimony was that only the one test hole far to the east side of Watson's Subdivision and joining the Greenlee property and nearby lagoon was polluted and neither it, the septic tank nor the landfill gave any evidence of gasoline smell or petroleum pollution; further the landfill was over a mile away, was used only a short time and had been covered over may years ago.

On this subject, in Weidner v. Lineback, supra, the court quoted from Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, as follows:

" 'It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. * * * That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.' "[4]

4. See Rikansrud v. City of Canton, 79 S.D. 592, 598, 116 N.W.2d 234.

As stated earlier the complaint alleged both negligence and a public nuisance. See Jost v. Dairyland Power Co-operative, 1969, 45 Wis.2d 164, 172 N.W.2d 647. Defendants' claims of error as to the sufficiency of the evidence were directed to the proof of causation or failure to prove they were responsible for the pollution. It having been determined the proof was sufficient against the challenges made, it is unnecessary to determine the basis of liability as no claim of error as to the court's instructions to the jury is before us on the denial of motions for a directed verdict and n. o. v.[5] The evidence sustains the jury finding that by flushing petroleum products from their tank farm and permitting them to flow or escape therefrom created a nuisance. See Greer v. City of Lennox, 79 S.D. 28, 107 N.W.2d 337.

We have not overlooked the fact that in Midwest Oil Co. v. Aberdeen, 69 S.D. 343, 10 N.W.2d. 701, this court reviewed the landmark English case of Rylands v. Fletcher[6] and Restatement, Torts, Chapters 20 and 21, especially § 520, and in the cited Yommer v. McKenzie, Md., 257 A.2d 138 opinion, the views of the court may be divergent therefrom. We believe they deserve mention.

In Midwest our court was content to rest the decision of absolute liability for tort upon the rule in Restatement, 1938, Torts, Chapter 21, especially § 519, which made one who carried on an ultrahazardous activity absolutely liable and § 520 which defined that as an activity which (a) involves a risk of serious harm, and (b) is not a matter of common usage. After mentioning the caveat to the comment on clause (a) of § 520, the court held the maintenance in the street of a watermain to distribute water was not an ultrahazardous activity. The court said watermains were universally in use in cities and thus it appears such use did not meet the requirement of § 520 (b).

---

5. That was the situation before the court in Yommer v. McKenzie, supra, note 2.
6. Fletcher v. Rylands, 3 H. & C. 774, 159 Eng.Rep. 737 (1865); rev'd in Fletcher v. Rylands, L.R. 1 Ex. 265 (1866); aff'd in Ryland's v. Fletcher, L.R. 3 H.L.330 (1868).

The 1969 Maryland Court of Appeals in the Yommer's opinion reviewed Rylands v. Fletcher; Restatement, Torts, 1938, § 519, and the caveat above mentioned to § 520; Dean Prosser's works on Torts and his criticism of the ultrahazardous rule. The opinion then refers to Restatement, Torts 2d (Tent.Draft No. 10, 1964) as providing more guidance for the court than its predecessor wherein an "abnormally dangerous activity" test has been substituted for the "ultrahazardous activity" test. Applying the new definition of an "abnormally dangerous activity" set out in § 520 of Tent.Draft No. 10, it concluded the storage of gasoline immediately adjacent to a private residence relieved plaintiff of proving negligence.

Our court in Midwest accepted and applied the then Restatement rule. It is unnecessary that we base the opinion on it or the Tentative Draft, except to state the complaint having alleged and evidence being sufficient to prove a cause of action based on the nuisance theory, it was not (as under the Restatement rule) necessary to prove negligence. Greer v. City of Lennox, 79 S.D. 28, 107 N.W.2d 337. Other errors argued do not merit reversal. The judgment is affirmed.

All the Judges concur.