**CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant,**

v.

**Fernando E. TYLER, Appellee.**

**No. 72–1576.**

United States Court of Appeals, Eighth Circuit.

Submitted April 10, 1973.

Decided Aug. 7, 1973.

**1008**

M. T. Woods, Sioux Falls, S. D., for appellant.

Warren W. May, Pierre, S. D., for appellee.

Before LAY and STEPHENSON, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The controversy before us arises out of damages suffered by a train of the plaintiff Chicago and North Western Railway Company (hereafter the railroad) due to a washout of its tracks and subsequent derailment of its train.

On the night of June 9, 1971, the area involved suffered, in a short period, an extremely heavy downpour of rain. It was of such intensity that it was characterized by. one witness as the "hardest rain he had ever seen" in a lifetime in South Dakota[1] and by another as one that might occur in a period from once in a hundred years to once in a thousand, depending upon the accuracy of the measurements made of the quantity of the downpour.[2] As a result there was a widespread flooding of the area with water from many sources,[3] including the Tyler dam, which breached. This dam had been built by Mr. Tyler on his ranch for the control of erosion and was located north of the line of the railroad. The train involved, traversing the flooded area, was derailed, a bridge torn out, and cars and locomotives severely damaged. The railroad brought this action against Mr. Tyler for damages to the extent of over $147,000. A jury verdict in defendant's favor resulted, with subsequent appeal to this court.

The issues presented to us by the appellant relate solely to the court's instructions, and they, in turn, relate to the substantive law of South Dakota respecting absolute liability .(the so-called rule of Rylands v. Fletcher[4]), nuisance, and so-called "Acts of God."

* Hon. Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Judge Hanson, App. 44.

2. Dr. Arie Gaalswyk; App. 51–52.

3. "[W]ater was coming out of the hills and over the intersection . . . such that you couldn't see the ditches as they were .covered with water and the water was gushing to the east." Mr. Johnson, App. 46.

4. Fletcher v. Rylands, 3 H. & C. 774, 159 Eng.Rep. 737 (1865) reversed in Fletcher v. Rylands, L.R. 1 Ex. 265 (1866), aff'd L.R. 3 H.L. 330 (1868).

It was the theory of the railroad that there was absolute liability on defendant Tyler's part under the Rylands v. Fletcher rule,[5] that the dam was negligently constructed and maintained, and (independently thereof) that it was a nuisance, making it unnecessary for the railroad to prove Tyler's negligence, thus coming in full circle back to the theory upon which *Rylands* is based.[6] The defendant, for his part, denied the applicability of the *Rylands* rule, under South Dakota law, to the facts at bar, denied his own negligence, asserted contributory negligence in the operation of the train, rejected the nuisance theory, and argued that an Act of God was solely responsible for the situation presented.

The District Court denied the applicability of the *Rylands* rule upon plaintiff's motion for directed verdict, holding that although the South Dakota Supreme Court had considered the *Rylands* rule in two cases[7] it had neither adopted nor rejected such rule and, in any event,

that the *Rylands* rule urged by the railroad was "not applicable to the facts in this situation."

We agree. Although it has been said with respect to the English cases involving the *Rylands* rule that from such "welter of cases it is impossible to extract any consistent principle"[8] the American view has, according to a distinguished student, reached the position that the rule is applied "only to the thing out of place, the abnormally dangerous condition or activity which is not a 'natural' one where it is."[9] Thus the storage of water in an area of sparse rainfall was held, in Turner v. Big Lake Oil Co., 128 Tex. 155, 96 S.W.2d 221 (1936) to be "a natural or necessary and common use of the land" and we note, as well, the use of this concept by the South Dakota court in Midwest Oil Co. v. City of Aberdeen, *supra*, where, in denying absolute liability sought to be imposed upon the city as a result of a break in a water main, the court pointed out that "Water mains are in universal use in cities."[10] Similarly here. The

---

5. As presented to the trial court the rule suggested was phrased in the following terms:

   "Your Honor, at this time the plaintiff moves the Court to direct the jury to return a verdict in favor of the plaintiff on the issue of liability, reserving only the question of the amount of damages that might be awarded, for the reason and upon the grounds that in essence, the doctrine of the old case of Rylands v. Fletcher should here apply.

   In other words, that one who keeps upon his premises a dangerous instrumentality such as was involved in this case, in such location that it could, and apparently in all probability would, in some instances, get out of his control and cause damage, is absolutely liable therefor, and that he must so use his own property and instrumentalities as not to damage others, and that failing to do so, he becomes liable for all damages ensuing such failure, or in this instance, the breach of the dam."

   Consonant therewith the plaintiff asserts error on the part of the court:—

   "In Refusing to Instruct That One Who So Collects and Keeps on His Land Anything Likely to Do Mischief if It Escapes Does So at His Peril and Is An-

swerable for All Damage Which Is the Natural Consequence of Its Escape."

6. See Prosser, Nuisance Without Fault, 20 Texas L.Rev. 399, 426: "[L]iability for what is called 'nuisance' very often rests upon a basis of strict liability, without proof of wrongful intent or negligence, and is not to be distinguished in any respect from the doctrine of Rylands v. Fletcher."

7. Midwest Oil Co. v. Aberdeen, 69 S.D. 343, 10 N.W.2d 701 (1943), and Watson v. Great Lakes Pipeline Co., 85 S.D. 310, 182 N.W.2d 314 (1970).

8. Goodhart, Restatement of the Law of Torts, Vol. III, 89 U.Pa.L.Rev. 265 (1941).

9. Prosser, Law of Torts, 4th Ed. (1971) p. 511.

10. The court was here commenting upon Section 520 of the Restatement of the Law of Torts, the Section accepting the principle of *Rylands* but limiting it to an "ultrahazardous activity" of the defendant:

   "The present facts disclose water being sent through a ten-inch main in the manner now generally accepted for the pur-

land owner did no more than construct a dam, normally empty, across a dry watercourse for erosion purposes. The record discloses that the construction of dams in this area for similar purposes is, if not a common practice, certainly not unusual. "I am a soil conservation technician," testified one witness.[11] "My job is concerned with dams, drainage, irrigation dams, stock dams and the like, in Stanley and Hughes [site of the Tyler dam] counties. In the last few years we've built about 10 or 12 dams, up to as high as 100 to 150 dams a year." Our review of the cases cited to us by both parties, as applied to the facts in the record before us, confirms the conclusion of the trial court that the *Rylands* rule as urged by the appellant, is not applicable hereto.

Plaintiff's theory of nuisance is no more helpful to it. Plaintiff complains that the court erred in instructing the jury that the "maintenance or rebuilding of a dam across a natural drainway is not a nuisance which renders the owner absolutely or strictly liable and that liability depends upon negligence." Corollary thereto were additional instructions set out in the margin hereof.[12]

The term "nuisance" is a sort of legal grab bag.[13] It was Thayer[14] who said, with ample support, that " 'Nuisance' is a good word to beg a question with. It is so comprehensive a term, and its content is so heterogeneous, that it scarcely does more than state a legal conclusion that for one or another of widely varying reasons the thing stigmatized as a nuisance violates the rights of others." We see no need to attempt the exploration of the ramifications of the various "kinds" of nuisance.[15] Suffice for our purposes that what is being urged by the railroad is that facet of nuisance described by Mr. Justice Cardozo, among others, as "absolute nuisance," [16] the situation where one acts at one's peril, such as "one who digs a hole in a highway."

---

pose of furnishing a water supply to city dwellers. We think it clear that such a distribution of water does not constitute an ultrahazardous activity. The definition of an ultrahazardous activity as set forth in Section 520 of the Restatement of the Law of Torts is as follows:

'An activity is ultrahazardous if it (a) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (b) is not a matter of common usage.'

Water mains are universally in use in cities, and to hold that a proper and reasonable use of such mains 'necessarily involves a risk of serious harm to the person, land or chattels of others' would be contrary to the experience of at least several generations." 10 N.W.2d at 701–702.

11. Mr. Marvin Johnson, App. 32.

12. The court, it is argued, erred:

"In Refusing to Instruct as Requested That if the Defendant's Dam Was a Nuisance as Defined by South Dakota Law Defendant Would Be Liable for All Damage Caused by Such Nuisance Whether or Not He Was Negligent, Unless the Sole Cause of Damage Involved Was an Act of God; and That if a Nuisance Existed Due Care and Precaution or Use of Ordinary Means to Avoid the Nuisance by the Defendant, Would Be No Defense.

In Refusing to Instruct That if a Nuisance Existed the Exercise of Due Care and Precaution by Defendant or Use of the Ordinary Means to Avoid the Nuisance Were Not a Defense."

13. The early development may be found in McRae, Development of Nuisance in the Early Common Law, 1 U.Fla.L.Rev. 27 (1948). See, also, Harper & James, The Law of Torts (1956), § 1.23 et seq.; Prosser, Law of Torts, 4th Ed. (1971) § 86 et seq.

14. Public Wrong and Private Action, 27 Harv.L.Rev. 317 (1914).

15. "An attempt to classify nuisance is . . . almost equivalent to an attempt to classify the infinite variety of ways in which one may be annoyed or impeded in the enjoyment of his rights. It is very seldom, indeed, that even a definition of nuisance has been attempted, for the reason that, to make it sufficiently comprehensive, it is necessary to make it so general it is likely to define nothing." Cooley, Torts, 1879 Ed., p. 566.

16. McFarlane v. City of Niagara Falls, 247 N.Y. 340, 160 N.E. 391 (1928).

But the difficulty with the plaintiff railroad's attempt to impose under the "absolute nuisance" doctrine the liability denied under the *Rylands* doctrine of "absolute liability" is that both legal theories rest upon essentially the same doctrinal foundation. As we have seen, the absolute liability of *Rylands* rests upon an abnormal use in an inappropriate place. Similarly, it is clear that strict liability under the doctrine of absolute nuisance exists where an unnatural use of the land is made, involving an extreme hazard to the safety of the plaintiff in the use of his land. We are cited to no South Dakota cases as precedent but the principle is well illustrated by the Kansas case of Gilbert v. Davidson Const. Co., 110 Kan. 298, 203 P. 1113 (1922) wherein the defendant operated a rock crusher in the street close to plaintiff's home, resulting in injury to and destruction of plaintiff's household goods, clothing, and food. A jury verdict for damages was sustained on appeal, despite the lack of showing of negligence on defendant's part, defendant insisting that it was merely "an ordinary rock crusher, operated in the ordinary way, and with the appliances usually employed." In affirming, however, the court pointed out that from its location alone its operation constituted a nuisance and "The fact that the business itself is lawful, and the machine skillfully operated, did not give the defendant a right to put and use it in front of a residence where is [sic] necessarily would cause injury and loss." [17] The principle here involved was well expressed, with numerous citations of authority, in Prosser on Torts, 4th Ed. (1971) §

87:—"[A] nuisance may arise where the defendant carries on in an inappropriate place an abnormally dangerous enterprise," where it "necessarily involves so great a risk to its surroundings that its location may be considered unreasonable, and a strict liability may be imposed." [18] From what we have pointed out heretofore with respect to abnormal use under the *Rylands* doctrine it is clear that there was no more justification upon these facts for the court's application of the absolute nuisance theory and the court did not err in the instruction given or in its denial of the requested instructions.

█ We find no error, under the facts before us, of the court's instruction on Acts of God. The instruction given followed substantially that in Northwestern Bell Telephone Co. v. Henry Carlson Co., 165 N.W.2d 346 (1969) and correctly stated the South Dakota law applicable under the circumstances presented.

Under the view we have taken of the case, namely, that in consideration of the entire record, and the body of instructions taken as a whole, and in context, there was no error in the instructions given or refused, we find it unnecessary to discuss appellee's argument that, in any event, the jury's verdict might well have been grounded either upon the railroad's own negligence in the operation of the train, or its failure to prove that defendant's acts proximately caused plaintiff's injury in view of the unusual weather conditions existing on the night in question.

Affirmed.

17. The ruling is reminiscent of Mr. Justice Sutherland's trenchant observation in Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926) that a nuisance "may be merely the right thing in the wrong place,—like a pig in the parlor instead of the barnyard."

18. Cf. Keeton, Trespass, Nuisance, and Strict Liability, 59 Col.L.Rev. 457 (1959).