SMITH, Justice:
Charles W. Cavanaugh filed his declaration in the Circuit Court of Jefferson Davis County demanding damages of Shell Oil Company for the alleged destruction of a number of small trees and injury to the *2 dam of a catfish pond as the result of seismographic exploration conducted on his land by Shell. From a judgment entered pursuant to a jury verdict awarding Cav-anaugh $4,000, Shell Oil Company appeals.
In August, 1971, Cavanaugh executed a mineral lease of his lands to Shell Oil Company, granting it, among other things, the right to explore for oil, gas, sulphur and other minerals. Such a grant has been held to include exploration by means of explosives and seismographic plotting. Ready v. Texaco, Inc., 410 P.2d 983 (Wyo.1966); Yates v. Gulf Oil Corp., 182 F.2d 286 (5th Cir.1950); Williams, Oil & Gas Law, 161, 200 (1971).
After the execution of the lease, but before exploration began, one Shields, employed by Shell to contact lessors and obtain their permission prior to beginning seismographic exploration, talked to Cav-anaugh and informed him that Shell would pay for any damage they caused by the contemplated activities.
Shields himself testified that, having so informed Cavanaugh, Shell went upon the property under the agreement with Cavan-augh to do so, and did, in fact, conduct such an exploration.
The incident which precipitated the present litigation occurred in October, 1971, approximately two months after the execution of the Cavanaugh lease, when Shell exploded one or more ten pound charges as part of the seismographic work. One of these was 200 to 300 feet from the catfish pond in question.
A substantial portion of the argument on this appeal has been directed to the proposition as to whether it was necessary that Cavanaugh establish negligence on the part of Shell in exploding the charge so near the pond in order to recover damages alleged to have been caused to the levee of the pond. It is unnecessary to discuss this question, however, in view of the agreement of Shell, made through its representative Shields, that Shell would be liable for, and would pay, any damages caused by its exploratory operations. This does not, however, obviate the necessity to prove that such damages, if any, were caused by, or were the result of Shell’s activities.
The testimony on behalf of Cavanaugh was to the effect^ that he was some distance from the pond at the time of the shot, and heard the explosion. He said that the explosion vibrated a very heavy tractor and “seemed like an earthquake.” Cavanaugh also testified that he had been to the pond two or three days before and had not observed any “moist” spot on the outside of the dam, but that after the explosion, when he again visited the pond, there was a “moist” spot on the dam. There was also testimony that the water level varied with dry spells not more than eighteen inches, but that afterward the water fell as much as four feet. It is not denied, however, that at the time of the trial, which took place approximately two years after the incident occurred, the pond was full of water and was being fished, the levee still standing and still effectively holding the water, although, according to Cavanaugh, there was still some leakage or seepage.
As opposed to this, expert witnesses testifying on behalf of Shell, stated that the size of the explosive charge detonated was only ten pounds, which was one-third of the normal charge, and could not possibly have caused any injury to the dam of the pond. It was testified that, at the time of the trial two years afterward, there was a bulge in the dam at one end and that this was caused by the absorption of water by the earthen dam and by the weight of water pressing against it in that condition.
In addition to the claim for damages to the levee, Cavanaugh also claimed that Shell had destroyed $300 worth of small trees and seedlings which he had growing on his lands, and this is not seriously dis *3 puted. In view of the agreement of Shell to be liable for damages caused by it the evidence as to the destruction of the trees by Shell, as well as to their value, while leaving a great deal to be desired in specificity, was undisputed and was sufficient to support a recovery for that item in the amount of $300.
But while it was unnecessary under the agreement made with Cavanaugh through Shields to show negligence on the part of Shell (in order to render Shell liable for such damages as proximately resulted from its activities), it was indispensable that evidence be produced sufficient to show that the explosion of the charge was the proximate cause of damage to the pond dam or levee. At most, the evidence on this point consisted in the coincidental explosion of the charge and the discovery afterward by Cavanaugh of a “moist” spot on the levee. This Court has held in numerous cases under similar circumstances that this is not sufficient to establish causal connection between such an explosion and the damage.
A similar situation is reflected in Continental Oil Company v. Hinton, 253 Miss. 233, 175 So.2d 512, 514 (1965), where this Court said:
The burden of proof was upon appel-lee to prove that the shot complained of damaged his well, Under the facts of this case we do not think that the burden was upon appellee to prove that appellant was guilty of any negligence in making the shot, although he alleged such negligence in his declaration. This is true because appellant agreed that it would be responsible for any damage done appellee by virtue of shots made on his land. All appellee needed to establish was a causal connection between the shot and the alleged damage. We have considered the evidence in this case on behalf of appellee in its most favorable light, and all the reasonable inferences that may be drawn therefrom, and we find that the most that can be said of it is that it established a possibility that the shot caused the damage. ... In all these cases we have held that the burden of proof is upon the person claiming damage to prove a causal connection between the explosion and the damage. The testimony in this case at its best only establishes a possibility that the well could have been damaged by the explosion. We have held in many cases that the possibility that a cause will produce a certain result does not constitute substantial testimony upon which a verdict may be based.
See also: Phillips Petroleum Company v. Smith, 184 So.2d 631, 632 (Miss.1966); Seismograph Service Corporation v. Barnett, 254 Miss. 340, 180 So.2d 918 (1965); Western Geophysical Company of America v. Martin, 253 Miss. 14, 174 So.2d 706 (1965); Humble Oil & Refining Company v. Pittman, 210 Miss. 314, 49 So.2d 408 (1950).
It is argued by appellee’s counsel that this Court should overrule its previous decisions on this subject and adopt a rule such as that which is, they say, applied in cases of “strict products liability.” It is urged upon us that landowners cannot easily produce proof of negligence or that explosions, in cases of this kind, proximately cause the claimed damage. Mere difficulty in producing essential proof has never been considered a sufficient justification for dispensing with the requirement that there be evidence fixing the blame for an injury upon the party being called upon to pay for it. Even in cases in which the “strict products liability” doctrine is applied, proof that the defective or dangerous product caused the injury is indispensable to recovery.
The effect of our conclusions in this case as to the claim for damages to the pond dam is that under the Shields agreement, Shell assumed absolute or “strict” *4 liability for damages caused by it, and therefore it remained only for Cavanaugh to produce evidence: (1) that an injury had occurred to the dam; (2) and that Shell had caused it. This he failed to do as required by the rule followed in numerous cases heretofore decided by this Court.
As to the $300 claim for the trees the only evidence offered on that point was sufficient to support recovery in that amount. This testimony, relating to the trees, fixed their value at $300 and their destruction by Shell is not seriously challenged, although the method of arriving at their value is severely criticized.
The judgment appealed from will be reversed, therefore, and judgment will be entered here for appellant, except only as to the single specific and undisputed item of damage for the destruction of the trees. As to that item ($300 for the trees) the judgment will be affirmed. Costs will be divided equally between the parties.
Reversed and judgment here for appellant, except as to the amount of $300, in which amount of $300 it is affirmed. Costs are assessed equally against the parties.
GILLESPIE, C. J., and PATTERSON, ROBERTSON and SUGG, JJ., concur.