**Goldie Kandel BENJAMIN, Appellant,**

v.

**HOT SHOPPES, INC., Appellee.**

No. 3073.

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 24, 1962.

Decided Nov. 13, 1962.

---

1. See Wright v. United States, 87 U.S.App.D.C. 67, 183 F.2d 821 (1950).

Harold L. Winston, Washington, D. C., for appellant.

James C. Gregg, Washington, D. C., with whom Hugh Lynch, Jr., Washington, D. C., was on the brief, for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and CAYTON (Chief Judge, Retired), sitting by designation under Code § 11–776(b).

HOOD, Chief Judge.

This action for breach of implied warranty alleged that plaintiff had become ill as a result of eating unwholesome food served by defendant. At the close of plaintiff's testimony, the trial court granted defendant's motion for a directed verdict, ruling that plaintiff had failed to establish a prima facie case.

Plaintiff, a registered nurse, was the only witness in her own behalf. She testified that on the day when her illness began, she was in attendance upon a patient at the Washington Hospital Center. For her evening meal she went to a cafeteria operated by defendant, located in the same build-

ing, and purchased a beef pie, tossed salad, carrots, a piece of rye bread and coffee. She consumed the entire meal with the exception of the salad; she ate only part of the salad because the French dressing "did not taste just right." Within a half hour after finishing the meal she "started to taste the food," belching or regurgitating it. Within an hour she was vomiting, experiencing abdominal pains and perspiring profusely. She continued to attend to her patient, but had to throw up several more times. At 11 o'clock she was relieved from duty and returned home; her nausea and diarrhea continued through the night. The weakness caused by these symptoms continued for four or five days; during this time she remained abed and could not report for her nursing duties. At no time was she examined by a doctor. A pharmacist whom she called sent her "coca cola pills," and a doctor to whom she reported her symptoms over the telephone said she was treating herself properly.

After testifying in some detail as to her professional training and background, and her experience in tending patients with similar symptoms, plaintiff was allowed to state, over objection, that in her opinion the cause of her distress was food poisoning. Stating that food normally clears the stomach in four hours, and that on the day of her illness she had eaten a normal breakfast and then nothing until supper, she ascribed her illness to the food eaten at supper, and excluded the possibility that it could have been caused by food consumed the previous day or at breakfast. However, she was unwilling to identify a specific food from among those she had eaten as the one that made her ill. After cross-examination, the court directed a verdict for the defendant.

■ Again in this case we are presented with the question whether a person alleging that he has been made ill by unwholesome food has produced evidence sufficient to avoid a directed verdict at the close of his case. Lohse v. Coffey, D.C.Mun. App., 32 A.2d 258, sets forth the requirements for a prima facie case in an action based upon breach of implied warranty, and establishes some guideposts for determining whether the moving party has met those requirements. The plaintiff must prove the purchase of the food, its unwholesomeness, and resulting injury. We are well aware of the difficulties of meeting this burden by direct evidence of contamination.

"Only the most litigious plaintiff would have had the presence of mind, in the throes of intermittent attacks of vomiting and diarrhea to arrange for laboratory tests and chemical analyses of his vomitus and excreta to be brought into court to prove his case. A man can hardly be expected to prepare a lawsuit while writhing on an ambulance stretcher or a hospital bed." Lohse v. Coffey supra, at 261.

■ Accordingly, we have recognized that a plaintiff may lay the foundation for a jury inference of unwholesomeness by circumstantial evidence. Such evidence may consist of proof that other persons who ate the same food were also stricken,[1] or of expert medical opinion that plaintiff's illness was food poisoning and that the foods eaten, if tainted, could have been the competent producing cause of the illness. Lohse v. Coffey, supra. And if, as in Campbell v. Safeway Stores, Inc., D.C. Mun.App., 149 A.2d 420, it may be inferred that an illness occurring soon after the consumption of food known to be contaminated was caused by tainted food, the reverse inference is also permissible: that when a gastric attack suffered soon after a meal is diagnosed by competent medical testimony as food poisoning, it may be inferred that some food eaten at that meal was tainted. Lohse v. Coffey, supra, 32 A.2d at 261. In short, "probable causes may be inferred from apparent effects." Doctors

1. Lohse v. Coffey, D.C.Mun.App., 32 A.2d 258; cf. China Doll Restaurant, Inc. v. MacDonald, D.C.Mun.App., 180 A.2d 503.

Hospital v. Badgley, 81 U.S.App.D.C. 171, 172, 156 F.2d 569, 570.

The plaintiff was not required to make out a perfect unassailable case in order to get to the jury. She was not bound to exclude every other possible cause for her illness; she had only to produce evidence making it more likely that her illness was caused by unwholesome food served by defendant than by a cause for which defendant would not be responsible. That more than one inference was available as to the cause of the illness would not subject her to a directed verdict so long as a jury could find it was more probable than not that defendant's food was contaminated.

Tested by these standards, plaintiff's evidence was sufficient to put defendant to its proof. While there was no evidence here, as there was in Lohse, that others had been made ill by eating the same food, neither was there evidence, as in China Doll Restaurant, Inc. v. MacDonald, D.C.Mun.App., 180 A.2d 503, that defendant had received no complaints about the food and had no knowledge of anyone becoming ill from it. There was evidence of the purchase of the food and of a subsequent illness, and an expert opinion that the illness was caused by food poisoning. There were facts indicating that the food consumed at defendant's cafeteria on the day in question caused the illness, and an expert opinion to that effect. A jury could take into consideration that these opinions were expressed by the plaintiff herself, and that she was a professional nurse rather than a physician,[2] but having been received in evidence,[3] they could not be disregarded at this stage of the trial.

Since plaintiff sustained her burden of making out a prima facie case, it was error to direct a verdict against her at the close of her case.

Reversed with instructions to grant a new trial.

2. The "degree of the medical expert's qualifications goes to the weight which the jury will accord his testimony, not to its admissibility." Hamilan Corporation v. O'Neill, 106 U.S.App.D.C. 354, 357, 273 F.2d 89, 92.

3. Whether a witness is qualified to testify as an expert is generally a question for the trial court. Davis v. District of Columbia, D.C.Mun.App., 59 A.2d 208. Graduate nurses have been permitted to testify in matters involving the exercise of medical judgment. Kimic v. San Jose-Los Gatos Interurban Ry. Co., 156 Cal. 379, 104 P. 986; Texas Employer's Insurance Ass'n v. Drews, Tex.Civ.App., 297 S.W. 630.