Linda L. FAJARDO, Plaintiff and Appellee,

v.

Ray CAMMACK, Individually and d/b/a Ray Cammack Shows, Defendant and Appellant.

No. 13438.

Supreme Court of South Dakota.

Argued Oct. 21, 1981.

Decided Aug. 11, 1982.

Rehearing Denied Sept. 10, 1982.

---

Franklin J. Wallahan of Hanley & Wallahan, Rapid City, for plaintiff and appellee.

Thomas H. Barnes of Costello, Porter, Hill, Nelson, Heisterkamp & Bushnell, Rapid City, for defendant and appellant.

MORGAN, Justice.

Defendant Ray Cammack (Cammack), appeals from the trial court's order which granted plaintiff Linda Fajardo (Fajardo) a judgment notwithstanding the verdict (judgment n. o. v.) or, in the alternative, a new trial. On appeal, Cammack argues

that he presented evidence sufficient to sustain the jury verdict and therefore the trial court erred in granting relief. We agree. We disagree, however, with Cammack's argument that the new trial order itself lacks the requisite specificity and that the conditional new trial was improperly granted. We affirm in part and reverse in part, remanding this case for a new trial consistent with this opinion.

Fajardo attended the Central States Fair on Sunday, August 14, 1977. Cammack was leasing the midway area from Central States Fair and subleasing certain spaces for fair booths. Cammack's operation included, among other things, subleasing space for the sale of foodstuffs on the midway. Wayne Mayberry (Mayberry), Cammack's concession manager, sold corndogs in the midway area. Fajardo alleges that she had purchased and eaten a corndog in the midway area at approximately 12:00 noon.

At about 7:00 that evening, Fajardo became ill. Her symptoms were nausea and diarrhea. Several days later she was diagnosed as having contracted salmonella enteritus, which sickness led to the development of an arthritic condition. Fajardo sued Cammack on the grounds of negligence, strict liability in tort, and breach of warrant of fitness, alleging that she had contracted salmonella from ingesting the corndog, resulting in severe injury and damage. Cammack merely pled a general denial.

At trial, both parties made the requisite directed verdict motions. The motions were denied and the case went to the jury which returned a verdict for Cammack. The trial court, however, granted Fajardo's motion that the jury verdict be set aside. The court entered a judgment n. o. v. on all liability issues on the theories of strict liability and breach of implied warranty and ordered a jury trial on the issue of damages only. In the alternative, if the foregoing be reversed on appeal, the trial court's order provided for a new trial on all issues.

On appeal, the first issue is the propriety of the judgment n. o. v. Cammack argues that the evidence at trial was sufficient to send the case to the jury on the issues raised by the pleadings and that Fajardo's lack of evidence made the jury verdict proper. Therefore, according to Cammack, the trial court erred in entering the judgment n. o. v.

In reviewing the propriety of the judgment n. o. v., we are cognizant that the motion is retroactive to a motion for a directed verdict and thus the motion, in effect, brings before the trial court for review a second time the grounds urged in support of the motion for directed verdict. SDCL 15–6–50(b); *Parham v. Dell Rapids Township*, 80 S.D. 281, 122 N.W.2d 548 (1963). *See Pearson v. Adams*, 279 N.W.2d 674 (S.D.1979). Both parties agree that we view the evidence in a light most favorable to the party against whom the motion was made, or as alternatively stated, in favor of the verdict. *Corey v. Kocer*, 86 S.D. 221, 193 N.W.2d 589 (1972). The sufficiency of the evidence to create an issue of fact as a matter of law is decided by the trial court and appellate court under the same standard, regardless of whether it arose on a motion for directed verdict or judgment n. o. v. *Stenholtz v. Modica*, 264 N.W.2d 514 (S.D.1978).

In reviewing the cases defining the proper standard of review, it is suggested that there is some ambiguity that needs clarification. One line of cases as epitomized in *Jerke v. Delmont State Bank*, 54 S.D. 446, 223 N.W. 585 (1929), cited recently with approval in *Fluharty v. Midland Nat'l Life Ins. Co.*, 275 N.W.2d 347 (S.D.1979), sets forth the reasonableness rule. This rule requires that the evidence must demonstrate that reasonable men could reach but one verdict before it can become a question of law for the court. The other, and seemingly antithetical lines of cases, spring from our decision in *Parham*, wherein we stated that the test is whether there is any substantial credible evidence to sustain the verdict. *Parham*, however, did not specifically reject, overrule or even mention the reasonable rule cases. Furthermore, the principal issue in *Parham* was the quantum of cir-

cumstantial evidence required to sustain the burden of proof of causation. In this regard, *Parham* adopted the rule that to prove proximate cause by circumstantial evidence, the circumstances adduced must render reasonably probable the existence of such facts, as opposed to mere possibility of causation. *Parham* thereby specifically modified *Erickson v. Todd*, 62 S.D. 280, 252 N.W. 879 (1934), which had applied the criminal law rule of proof of circumstantial evidence beyond a reasonable doubt to civil cases. As a corollary to the *Parham* rule, the *Parham* opinion further noted that where the court finds the probabilities are equal, the burden of proof was not sustained.

In *Farner v. Paccar, Inc.*, 562 F.2d 518, 525 n. 10 (8th Cir. 1977), Judge Heaney, writing for a panel of the Eighth Circuit Court of Appeals, noted the apparent conflict between *Parham* and the "well established South Dakota rule that questions of proximate cause are to be taken from the jury only when the facts are such that reasonable men could not differ as to the conclusion to be drawn therefrom." We think that the two lines of cases are compatible. These cases are merely addressing different concepts, just as circumstantial evidence is distinguished from direct evidence.

■ Circumstantial evidence is a product of inference. It is "[e]vidence of facts or circumstances from which the existence or non-existence of the fact in issue may be inferred." Black's Law Dictionary 221 (rev. 5th ed. 1979). Thus, circumstantial evidence can fall in a wide range of possibilities or probabilities. The *Parham* rule merely says that in applying the reasonableness rule, the court does not have to consider every far-out possibility but rather only balance the preponderance of the probabilities. Consequently, the greater the preponderance the more likely the issue will become a question of law for the trial court under the reasonableness rule.

■ With the above standards and precepts in mind, we next examine the evidence adduced at trial. The chief elements which a plaintiff must prove in a case involving strict liability in tort are (1) the defective and unreasonably dangerous condition of the defendant's product, including the defendant's connection with the product, and (2) a causal connection between such condition and the plaintiff's injuries or damages. Annot., Products Liability, Strict Liability in Tort, 13 A.L.R.3d 1057 (1967). Obviously these same two elements, defective product and causation, are essential in proving breach of warranty of fitness.

■ As we have noted above, under *Parham*, proximate cause may be proved by circumstantial evidence. We held in *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D. 1976), that circumstantial evidence may also be used to show that the product was defective and that such a defect existed when the product left the manufacturer's hands. *See also Engberg v. Ford Motor Company*, 87 S.D. 196, 205 N.W.2d 104 (1973) disapproved in part in *Smith v. Smith*, 278 N.W.2d 155 (S.D.1979); *Jahnig v. Coisman*, 283 N.W.2d 557 (S.D.1979).

■ Both parties presented expert medical testimony that the onset of salmonella can occur from four to forty-eight hours after eating contaminated food. Fajardo testified that although she had placed mustard on the corndog and drank a beer and a coke, she was uncertain about what else, if anything, she had eaten during the forty-eight hours before she began feeling ill. Moreover, salmonella is usually contracted from unrefrigerated food. There is some evidence that the corndog would have been purchased from a popcorn wagon containing refrigeration equipment. Obviously, in this instance, the proof of the defectiveness in this instance depended on circumstantial evidence, since,

> [o]nly the most litigious plaintiff would have had the presence of mind, in the throes of intermittent attacks of vomiting and diarrhea to arrange for laboratory tests and chemical analyses of his vomitus and excreta to be brought into court to prove his case. A man can hardly be expected to prepare a lawsuit while

writhing on an ambulance stretcher or a hospital bed.

*Lohse v. Coffey*, 32 A.2d 258, 261 (D.C.App. 1943); *Benjamin v. Hot Shoppes, Inc.*, 185 A.2d 512 (D.C.App.1962).

We further note that Fajardo attempted to introduce morbidity reports which compiled the incidents of salmonella in the Rapid City vicinity during August and September, when the fair was in town, and October. The report lacked any background information on particular occurrences of the disease. This offer was excluded by the trial court, although one of the medical experts had earlier testified that an epidemiological study showing that a group of people contracted salmonella from the same source as Fajardo was strong evidence of the defect. From the record we are uncertain as to how far Fajardo could develop this line of testimony to connect these cases with the midway of the fairground. If it can be so connected, obviously it should be admissible evidence.

Considering the evidence before us, while we could find the probabilities of the defect and causation more than equal, we cannot say that they are so strong that reasonable men could not disagree and we therefore hold that the trial court erred in granting Fajardo a judgment n. o. v.

We next examine Cammack's argument that the trial court erred in entering an order conditionally granting the motion for new trial and that the order, as entered, was defective in that it did not specify the grounds upon which it was based. We first examine the technical aspect as to whether the order met the standard of particularity required by *Mueller v. Trudell*, 78 S.D. 624, 106 N.W.2d 374 (1960). In *Mueller* we said:

> Statutory grounds for new trial are exclusive and when a trial court grants a new trial it is required to "specify each and every ground upon which it bases such order" .... [T]he specification of grounds "shall be actual and detailed as to the particular errors which the trial judge relies upon as justifying the granting of a new trial, and shall not be a mere reiteration of the broad general grounds stated in [SDCL 15–6–59(a)]."

78 S.D. at 628, 106 N.W.2d at 376 (citations omitted). Cammack's argument, however, is somewhat misplaced.

■ Although the instant order merely stated, "that there is an insufficiency of the evidence to justify the verdict for said defendant in that the verdict of the jury is unreasonable, arbitrary and unsupported by the evidence and against the overwhelming preponderance of the evidence and is therefore against both the law and the evidence," Fajardo's motion lists eight particulars of insufficient evidence and twelve additional errors in the trial itself. In *Mueller*, both the order and the motion lacked particularity. Here, we are not faced with a similar fault in the pleadings. Instead, any lack of particularity in the order was cured by Fajardo's motion. *See, e.g., Fales v. Kaupp*, 83 S.D. 487, 161 N.W.2d 855 (1968); *Ford v. Policky*, 81 S.D. 361, 135 N.W.2d 473 (1965); *Jensen v. Miller*, 80 S.D. 384, 124 N.W.2d 394 (1963); *compare Pearson v. Adams, supra*. This rule is consistent with our position that we will affirm the grant of a new trial on grounds stated in the motion, even where the trial court did not rely on those grounds to grant the new trial. *Plucker v. Chicago, M. & St.P.Ry. Co.*, 48 S.D. 185, 203 N.W. 208 (1925); *see also Corsica State Bank v. Heezen*, 54 S.D. 113, 222 N.W. 671 (1928). We hold that the motion was sufficiently particular to vest the trial court with jurisdiction to grant the motion for new trial.

■ Looking then to the propriety of the trial court granting the motion, in *Jensen v. Miller*, this court said:

> It is well established that an application for new trial on the ground of insufficiency of the evidence is addressed to the sound judicial discretion of the trial court and its ruling will not be disturbed in the absence of a clear showing of abuse of that discretion.
>
> Orders granting new trials stand on firmer ground than orders denying them as they are not conclusive or decisive of any rights or issues. On the contrary

they merely "open the way for a reinvestigation of the entire case upon its facts and merits."

80 S.D. at 389, 124 N.W.2d at 396 (citation omitted). *See Lewis v. Storms*, 290 N.W.2d 494 (S.D.1980).

This situation is very similar to that discussed by the Municipal Court of Appeals for the District of Columbia in *Reading v. Faucon*, 134 A.2d 376 (D.C.App.1957). There the court held that the trial court's

> failure to state the ground for the grant of a new trial does not ... require a remand [by the appellate court] for that purpose.... [Where] it is rather obvious that the trial court felt that if it was wrong in granting judgment n. o. v., a new trial should be granted on the ground that the verdict was contrary to the evidence ....

134 A.2d at 379.

We affirm the granting of a new trial.

DUNN and HENDERSON, JJ., concur.

WOLLMAN, C. J., concurs specially.

FOSHEIM, J., dissents.

WOLLMAN, Chief Justice (concurring specially).

I agree that the judgment notwithstanding the verdict should be reversed and that the order granting the new trial should be affirmed (although I believe that the order granting the new trial is also sustainable by reason of the trial court's refusal to admit the morbidity reports and in refusing the medical testimony to the effect that carnivals are one of the principal sources of salmonella enteritus in the state).

I concur specially only on the issue of the applicability of the rule announced in *Parham v. Dell Rapids Township in Minnehaha County*, 80 S.D. 281, 122 N.W.2d 548 (1963). When read in the light of this court's decision in *Weidner v. Lineback*, 82 S.D. 8, 140 N.W.2d 597 (1966), *Parham* is not really in conflict with the principles set forth in *Jerke v. Delmont State Bank*, 54 S.D. 446, 223 N.W. 585 (1929), and cases based thereon.

In *Weidner*, supra, the court stated, in rejecting defendants' contention that the

trial court should have granted their motion for directed verdict, "Nor can this court weigh the probabilities arising from the evidentiary facts to determine whether it is more probable the accident was proximately caused by plaintiff's failure to gear the truck down or by inadequate brakes." 82 S.D. at 16, 140 N.W.2d at 601. The court went on to say:

> As the United States Supreme Court pointed out in *Tennant v. Peoria & P. U. Ry. Co.*, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520, "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable * * * That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

*Id.* at 16, 140 N.W.2d at 601. See also *Watson v. Great Lakes Pipeline Company*, 85 S.D. 310, 182 N.W.2d 314 (1970).

Read in the light of the *Weidner* and *Watson* cases, *Parham* is not inconsistent with *Jerke v. Delmont State Bank*, supra. Although it could be argued that the *Parham* opinion reached the wrong result on the facts, the principles of law that it espoused are not at odds with the long-standing rule regarding directed verdicts.

FOSHEIM, Justice (dissent).

While the special concurrence argues that *Parham* does not really conflict with *Jerke*,

the point is that the majority assumes a conflict and then proceeds to hold that both rules are viable, the *Parham* rule appropriate for cases based on circumstantial evidence. To my knowledge no standard of review, in either criminal or civil litigation, has ever been based on a distinction between direct and circumstantial evidence. We should, and can, avoid such a distinction now. Any existing ambiguity in judging a motion n. o. v. should be resolved, regardless of the nature of the evidence, by either adhering to the *Jerke* rule or the rule applied in the *Parham* line of cases.

Also, while I recognize that our ground rules for reviewing the trial court's action on a motion n. o. v. and a motion for a new trial are different, in this case both motions challenged the sufficiency of the evidence to support the verdict. The majority states "... Cammack argues that he presented evidence sufficient to sustain the jury verdict and therefore the trial court erred in granting relief. We agree." The majority opinion then disagrees with Cammack's argument that the trial court erred in granting plaintiff's motion for a new trial based on insufficient evidence. To reverse the trial court on one motion and affirm it on the other, for the same reason, is inconsistent.