1997 SD 102

Charles GLEASON, Ann Gleason and Charles Gleason, as Guardian Ad Litem of Michael S. Gleason, a minor, Plaintiffs and Appellants,

v.

Trevor PETERS; Eric Johnson; Christopher Schleuning; David Huck; Paula Wennberg, Defendants,

and

Deputy Sheriffs Dave Smith and Brian Dean; and Lawrence County, a political subdivision of the State of South Dakota, Defendants and Appellees.

No. 19795.

Supreme Court of South Dakota.

Argued March 25, 1997.

Decided Aug. 13, 1997.

Steven M. Christensen, Deadwood, for plaintiffs and appellants.

Thomas E. Brady, Spearfish, for defendants and appellees.

AMUNDSON, Justice.

[¶ 1.] Charles and Ann Gleason (Gleasons) on behalf of their son, Michael Gleason (Michael), appeal the grant of summary judgment in favor of Deputies Dave Smith (Smith) and Brian Dean (Dean) (often collectively referred to as officers), and Lawrence County. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] On December 31, 1994, Wayne Huck received permission from his father, David Huck (Huck), to have an underage drinking party on their leased premises located a few miles north of Whitewood, South Dakota. Kegs of beer were purchased and various students from Brown High School in Sturgis, South Dakota, were invited. As the students arrived, they were charged an entrance fee if they intended to drink the beer supplied by the Hucks.

[¶ 3.] It is undisputed that two Lawrence County police officers received an anonymous tip of a potential juvenile party near Whitewood. Deputy Smith was the first officer to arrive at the scene after noticing a bonfire. He drove through an unlocked gate on the Huck premises. At that time, Huck approached Smith's vehicle and the two conversed about the party. Smith then left the scene and met with other officers to discuss options regarding further investigation of the party. Smith initially spoke with Dean and then the two contacted the chief deputy for guidance. The chief deputy suggested using a spotting scope to assist with the identifica-

tion of the individuals in order to obtain probable cause. However, the officers were unable to do so, as they received a priority call regarding another matter to be investigated forthwith.

[¶ 4.] Meanwhile, Michael arrived at the Huck residence. He did not drink alcoholic beverages before or during the party. While there, Michael was attacked by Trevor Peters (Peters), Eric Johnson (Johnson), and Christopher Schleuning (Schleuning), other students attending the party. After being hit and kicked repeatedly, Michael was driven by a friend to his parents' residence. From there, he was taken to the emergency room at a hospital in Sturgis. As a result of the beating, Michael received two reconstructive surgeries on his face and incurred medical expenses in excess of $40,000.

[¶ 5.] Gleasons, on behalf of Michael, sued Peters, Johnson, and Schleuning for assault; Huck for failing to supervise the activity involved and for furnishing alcoholic beverages to minors; the owner of the premises for allowing Huck to host such a party; Deputies Smith and Dean, and Lawrence County for failing to stop the party. The trial court granted summary judgment in favor of Smith, Dean, and Lawrence County based on the special duty test established in *Tipton v. Town of Tabor*, 538 N.W.2d 783, 787 (S.D. 1995) (*Tipton I*). Michael appeals the grant of summary judgment to these parties, raising the following issues:

I. Whether the public duty rule should be abrogated.

II. Whether the trial court erred when it applied the factors relevant to imposition of liability on a government entity, and concluded that there was no genuine issue of material fact.

## STANDARD OF REVIEW

[¶ 6.] We addressed the standard of review to be applied under similar facts in *Tipton I*:

Summary judgment shall be granted "... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

tled to judgment as a matter of law." SDCL 15–6–56(c). On appeal, our task is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. Whether a duty exists is a question of law for the court to determine.

538 N.W.2d at 785 (citations omitted). Furthermore, we may affirm the trial court if any reason exists to do so. *Sparagon v. Native Am. Publishers, Inc.*, 1996 SD 3, ¶ 33, 542 N.W.2d 125, 133.

## DECISION

### [¶ 7.] I. Public–Duty Rule.

[¶ 8.] Gleasons argue that the public-duty rule should be abrogated, because it "has no place in South Dakota jurisprudence[.]" We disagree. We recently upheld the application of the public-duty rule in *Tipton v. Town of Tabor*, 1997 SD 96, ¶¶ 9–13, 567 N.W.2d 351, 358 (*Tipton II*), citing various reasons supporting the doctrine. One of these reasons is to promote "accountability for offenders, rather than police who through mistake fail to thwart offenses." *Id.* at ¶ 10, 567 N.W.2d at 356. "Otherwise, lawbreaker culpability becomes increasingly irrelevant with liability focused not on the true malefactors, but on local governments." *Id.* This is particularly applicable to the case at hand, because to hold as Gleasons urge would be to hold the officers accountable for the unforeseeable actions of lawbreakers simply because the officers were unable to stop an underage drinking party. As we have stated, "[g]enerally, the law imposes 'no duty to prevent the misconduct of a third person.'" *Id.* at ¶ 12, 567 N.W.2d at 357 (quoting *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 804 (Minn.1979)).

[¶ 9.] Gleasons are essentially urging this Court to allow a cause of action against the county under a theory of strict liability. The facts in this case certainly do not warrant such a result. Therefore, we again decline the opportunity to open the floodgates of litigation and abrogate the public duty rule in South Dakota.

**[¶ 10.] II. *Tipton I* Factors.**

[¶ 11.] Not having abrogated the public-duty doctrine, we address Gleasons' second argument on appeal. They argue that the trial court erred in determining there was no genuine issue of material fact as to whether Smith, Dean, and Lawrence County possess a special relationship with Gleasons.

[¶ 12.] The special duty rule provides that a plaintiff must show a breach of a duty owed to him/her as an individual rather than to the community at large in order to establish liability. *Id.* at ¶ 13, 567 N.W.2d at 358. This rule states that "when a public entity acts on behalf of a particular person actively causing injury, the law may impose liability because the government has by its conduct already made a policy decision to deploy its resources to protect such individual." *Id.* (footnote omitted).

[¶ 13.] Other jurisdictions have addressed whether a special duty is imposed upon law enforcement officers which serves as a basis for damages incurred to a specific class of individuals. A summary of those decisions follows:

> Ordinarily, a breach of the general duty to prevent criminal acts which police owe to the public does not impose liability upon the employing governmental unit for damages which particular citizens suffer as a result of the breach. Instead, only where a special duty, i.e., a duty particularized as to an individual, is breached by the police will the municipality be held liable for damages.... When the reliance element is either not present at all or if present, is not causally related to the ultimate harm, this underlying concern is inapplicable and the invocation of the special duty exception is then no longer justified.

Eugene McQuillin, *Municipal Corporations* § 53.04.50, at 179 (3rd Ed.1993) (footnotes omitted); *see also Taylor v. Phelan*, 9 F.3d 882, 886 (10th Cir.1993) (holding there was no special duty by the police officer to protect a family who expressed fear of a perpetrator); *Calogrides v. City of Mobile*, 475 So.2d 560, 562 (Ala.1985) (holding that there was no liability based on the city's failure to deploy a certain number of officers to a scene); *Shore v. Town of Stonington*, 187 Conn. 147, 444 A.2d 1379, 1384 (1982) (holding that public interest would not be served by second-guessing a police officer's exercise of discretion and creating liability for not arresting a drunk driver); *Robertson v. City of Topeka*, 231 Kan. 358, 644 P.2d 458, 463 (1982) (holding there was no special duty by the police officer to remove an unwanted person from another's premises even after receiving a warning); *Motyka v. City of Amsterdam*, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 597, 204 N.E.2d 635, 637 (1965) (holding that a municipality is not liable for failing to provide police protection); *Coleman v. Cooper*, 89 N.C.App. 188, 366 S.E.2d 2, 7 (1988) (holding there was no liability for the failure to provide police protection to witnesses who were to testify against the assailant); *Wuethrich v. Delia*, 155 N.J.Super. 324, 382 A.2d 929, 930 (1978) (holding that a municipality is not liable for its "failure to protect against the criminal propensity of third persons.").

[¶ 14.] We then examine the relevant precedent in South Dakota. In *Tipton I*, this Court recognized that there may be certain circumstances in which a government entity possesses a special duty that results in liability. In order to properly examine those circumstances, we adopted four factors to be applied when determining whether a county "assumes to act for the protection of individuals":

> "1) the state's actual knowledge of the dangerous condition;
>
> 2) reasonable reliance by persons on the state's representations and conduct;
>
> 3) an ordinance or statute that sets forth mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole; and
>
> 4) failure by the state to use due care to avoid increasing the risk of harm."

*Tipton I*, 538 N.W.2d at 787 (quoting *Cracraft*, 279 N.W.2d at 806–07). "Strong evidence concerning any combination of these factors may be sufficient to impose liability on a government entity." *Id.* This was slightly modified, however, in *Tipton II*, wherein this Court held that meeting only one element, actual knowledge, is insufficient to establish a private duty. *Tipton II*, 1997

SD 96, at ¶ 28, 567 N.W.2d at 363–64 (stating, "To impose tort liability upon local law enforcement for failure to protect an individual solely upon actual knowledge of imminent danger directly conflicts with the principal rationale behind the public duty rule[.]") Keeping this modification in mind, we address each of the four *Tipton I* factors in a light favorable to Gleasons.

### [¶ 15.] A. Actual Knowledge

■ [¶ 16.] According to *Tipton II*, " '[a]ctual knowledge' means knowledge of 'a violation of law constituting a dangerous condition.' Constructive knowledge is insufficient: a public entity must be uniquely aware of the particular danger or risk to which a plaintiff is exposed. It means knowing inaction could lead to harm." *Id.* at ¶ 17, 567 N.W.2d at 358 (citations omitted). In addition, "actual knowledge denotes a foreseeable plaintiff with a foreseeable injury." *Id.* at ¶ 18, 567 N.W.2d at 359. Therefore, in the case before us, the officers must have had actual knowledge that their failure to stop the party would lead to Michael being assaulted by individuals who attended the party.

■ [¶ 17.] Gleasons, however, merely argue there was substantial evidence that Smith was aware of juveniles consuming alcohol on the Huck premises.[1] Assuming it is true that Smith knew juveniles were consuming alcohol at the party (i.e., in a light most favorable to Gleasons, consistent with our review of summary judgment motions), the actual knowledge element is not met, because Gleasons presented no evidence in resistance to the motion for summary judgment that Smith knew there would be an assault and that a victim would be injured. In fact, a great leap would be required to show Smith knew an assault would occur. Further, it is

insufficient that Smith should have known an assault would occur. *See, e.g., id.* (stating, "actual knowledge imports 'knowing' rather than 'reason for knowing' ").

[¶ 18.] Gleasons argument to the trial court defending the grant of a motion for summary judgment relies on the theory that negligence cases are not usually appropriate for summary judgment motions. There were no references to specific disputed facts concerning the knowledge possessed by the officers as to a potential assault.

### [¶ 19.] B. Reasonable Reliance

■ [¶ 20.] Gleasons fail to include an argument or cite authority in their brief concerning the second factor, reliance on the police officers' conduct. "Failure to cite authority violates SDCL 15–26A–60(6) and constitutes a waiver of that issue." *State v. Phillips*, 489 N.W.2d 613, 616 (S.D.1992).

### [¶ 21.] C. Ordinance for Protection of Particular Class

■ [¶ 22.] As stated in *Tipton II*, "[t]his element 'permits recovery against a government entity for negligent failure to enforce its laws only when there is language in a statute or ordinance which shows an intent to protect a particular and circumscribed class of persons.' " 1997 SD 96, at ¶ 35, 567 N.W.2d at 366 (quoting *Tipton I*, 538 N.W.2d at 786) (other citations omitted).

■ [¶ 23.] In their brief to this Court, Gleasons contend SDCL 7–12–4 applies to this element, which states:

It shall be the duty of the sheriff to comply with all orders of the attorney general or his agents and at all times, whether on duty under the call of the attorney general

---

1. Gleasons' brief states: "[T]here is substantial evidence that Deputy Smith knew that the party at the Hucks involved consumption of alcohol by minors, both from the tip and from his conversation with Huck, if not Smith's own observations of the activities around the bonfire." It is undisputed that an anonymous tip was received by the police that underage drinking was occurring near Whitewood. Further, Smith admits to locating a party and having a discussion with Huck. However, there is no evidence in the record indicating that the police officers undeniably knew there were minors drinking alcoholic beverages, and that the officers were capable of alleviating the danger involved with the situation. As Smith testified, he felt he did not have probable cause to enter the Huck premises. Dean also testified that the two officers contacted the chief deputy for guidance, and he agreed that probable cause was lacking. He suggested using a spotting scope in order to identify an individual as a juvenile, thereby obtaining probable cause. However, Dean mentioned that the officers never had the opportunity to use the scope because a priority call was received. Shortly thereafter, the officers were notified as to Michael's injuries.

or his agents or not, to see to it as far as may be possible that all the laws of this state and especially all laws relating to alcoholic beverages are faithfully executed and enforced.

The language in this statute alone illustrates its broadness, e.g., "all the laws of this state" and "all laws relating to alcoholic beverages[.]" "When a statute's language is clear, certain and unambiguous, our function confines us to declare its meaning as plainly expressed." *Wiersma v. Maple Leaf Farms,* 1996 SD 16, ¶ 6, 543 N.W.2d 787, 790 (citing *U.S. West Communications v. Public Utils. Comm'n,* 505 N.W.2d 115, 123 (S.D.1993)). The clear language of this statute provides that officers are to enforce the law. This certainly means to enforce the law in order to protect the general public and not a particular class of individuals.

### [¶ 24.] D. Failure To Avoid Increasing Risk of Harm

[¶ 25.] This factor means the action of the officers must cause harm or expose Gleasons to a greater risk. *Tipton II,* 1997 SD 96, at ¶ 38, 567 N.W.2d at 366–67. Gleasons argue this factor "has a strong presence in this case." However, they misinterpret the meaning of the element. Rather than demonstrate how the officers failed to avoid increasing the risk of harm, Gleasons simply argue the officers failed to use due care. Even if we assume it is true that the officers failed to use due care and were unable to decrease any possible harm to Michael, we have stated, "[f]ailure to diminish harm is not enough." *Id.* (citation omitted). It is undisputed that no affirmative action by the officers " 'contributed to, increased, or changed the risk which would have otherwise existed.' " *Id.* at ¶ 39, 567 N.W.2d at 367 (quoting *Von Batsch v. American Dist. Telegraph Co.,* 175 Cal.App.3d 1111, 222 Cal.Rptr. 239, 246–47 (1985) (involving a killing by intruders after officers failed to find evidence of intruders)). All that is shown here is that the officers failed to eliminate the potential danger of an assault being committed on a juvenile at the party. The undisputed facts in this case disclose the officers exposed Mi-

chael to no greater a risk than that to which the public was exposed. Therefore, Gleasons fail to meet the requirements of *Tipton II.*

### Conclusion

[¶ 26.] We affirm the trial court's grant of summary judgment in favor of Smith, Dean, and Lawrence County on the basis that a special duty does not exist on behalf of those parties as a matter of law.

[¶ 27.] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 28.] SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 29.] There are genuine issues of material fact concerning the exceptions to the public duty doctrine and the trial court should have allowed this case to go to a jury. "The burden of proof is upon the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." *State Dep't of Revenue v. Thiewes,* 448 N.W.2d 1, 2 (S.D. 1989) (citation omitted). Since the defendants did not meet their burden, summary judgment was improperly granted and we should reverse.

### [¶ 30.] 1. THERE ARE GENUINE ISSUES OF MATERIAL FACT WHETHER DEFENDANTS HAD ACTUAL KNOWLEDGE OF THE POTENTIAL FOR VIOLENCE BY DRINKING MINORS.

[¶ 31.] Deputies Smith and Dean were both in close proximity to this underage drinking party which they both believed to be the juvenile gathering mentioned in the anonymous telephone call. Smith was actually on the premises, saw the bonfire surrounded by "a large gathering of people," and was told by Huck that "The kids are drinking, and they're stayin' here." Smith and Dean repeatedly testified in their depositions that they had a "gut feeling" and were suspicious that underage drinking was going on. Furthermore, Huck told Smith there was "parental supervision" [2] and that the gate would be

---

**2.** In his deposition, Smith testified that he was

aware of the law allowing a minor to drink

locked to bar the exit to anyone who was drinking.

[¶ 32.] Smith now claims he lacked "probable cause" to investigate further to determine whether juveniles were consuming alcohol; however, in his deposition he admitted to believing that "a reasonable suspicion that a crime is being committed" is the standard for whether an officer can investigate a potential criminal situation.[3] "The existence of reasonable suspicion is a question of law which is fully reviewable by this court." *State v. Lownes,* 499 N.W.2d 896, 898 (S.D.1993).

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301, 309 (1990).

*Id.* at 899. The information available to the defendants was easily enough to establish reasonable suspicion inviting further investigation: 1) On New Year's Eve, they received an anonymous tip of an underage drinking party in progress; 2) they observed a bonfire surrounded by "a large gathering of people"; 3) Huck told Smith "The kids are drinking, and they're stayin' here"; 4) Huck also told Smith that there was "parental supervision," an obviously improbable element of an *adult* party.

[¶ 33.] As a matter of law, the defendants possessed adequate information to establish reasonable suspicion. It is up to a jury to decide whether the defendants were derelict in their duty in failing to conduct further investigation. It is also for the jury to determine whether violence by an intoxicated minor was reasonably foreseeable based upon the defendants' observations of the party and further, whether that constitutes actual knowledge of the likelihood of violence. Whether there is factual justification for finding that Michael's injury was foreseeable presents a jury question. *Westover v. East River Elec. Power Coop., Inc.,* 488 N.W.2d 892, 896 (S.D.1992); *Peterson v. Safway Steel Scaffolds Co.,* 400 N.W.2d 909, 913 (S.D. 1987).

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

*Fajardo v. Cammack,* 322 N.W.2d 873, 878 (S.D.1982) (Wollman, C.J., concurring specially) (citations omitted). *See Tri–State Ins. Co. of Minn. v. Bollinger,* 476 N.W.2d 697, 700 (S.D.1991) (noting that facial lacerations received in a drunken fight "could be expected in combat, a fracas, or tussle"); *Limpert v. Bail,* 447 N.W.2d 48, 50 (S.D.1989) ("If reasonable persons, upon examining the evidence, might reach different conclusions, a motion for summary judgment should be denied and the case tried on the merits.") (citation omitted).

---

alcohol in the presence of a parent, guardian, or spouse. *See* SDCL 35–9–1 and –1.1. He conceded that if 10 underage drinkers were present, there must be 10 parents, guardians, or spouses also present to render the act of underage drinking non-criminal. Dean was also aware of this law.

3. Dean also testified by deposition that he did not investigate further because of lack of probable cause, but later admitted that was the standard · for arrest, not investigation. *See State v. Soft,* 329 N.W.2d 128, 129 (S.D.1983) ("A police officer, in performing his official work, may properly question persons when the circumstances reasonably indicate that it is necessary to the proper discharge of his duties.") (quoting *State v. Burkman,* 281 N.W.2d 436, 439 (S.D.1979)). "[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *State v. Boardman,* 264 N.W.2d 503, 505–06 (S.D.1978) (quoting *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)). "[I]n justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Id.* at 506.

**[¶ 34.] 2. REASONABLE RELIANCE**

[¶ 35.] As noted by the conference opinion, Gleasons do not attempt to allege reliance. However, a plaintiff's inability to prove reliance is not a bar to suit. *See Andrade v. Ellefson,* 391 N.W.2d 836, 843 (Minn.1986) (finding a special duty when first factor only partially met and third factor conclusively established); *Tipton v. Town of Tabor,* 538 N.W.2d 783, 787 (S.D.1995) (*Tipton I*) ("Strong evidence concerning any combination of these factors may be sufficient to impose liability on a government entity.").

**[¶ 36.] 3. THERE ARE GENUINE IS-SUES OF MATERIAL FACT WHETHER MICHAEL WAS A MEMBER OF THE CLASS PRO-TECTED BY THE STATUTES.**

[¶ 37.] The plain language in *Tipton I* instructs that the language of a statute is not dispositive of whether there is a duty to any particular class of persons:

> Sole reliance on statutory language in determining whether a duty exists is needlessly restrictive and arbitrary. A statutory reference to a particular class of persons could very well be inadvertent rather than the result of any reasoned analysis of municipal or county responsibility. We require an analytical framework that more accurately measures a public entity's culpability for the harm suffered.

538 N.W.2d at 787. Despite this language, the conference opinion concludes that, since the statute raised by Gleasons does not mention a particular class, it was not intended to protect Michael.

[¶ 38.] Defendants were empowered to stop this party. SDCL 7–12–4 provides:

> It shall be the duty of the sheriff to comply with all orders of the attorney general or his agents and at all times, whether on duty under the call of the attorney general or his agents or not, to see to it as far as may be possible that all the laws of this state and *especially all laws relating to alcoholic beverages* are faithfully executed and enforced.

(Emphasis added). Smith testified that, once he knows of underage drinking, he has no option but to stop the party.[4] The Legislature emphasized the importance of enforcing "all laws relating to alcoholic beverages" in SDCL 7–12–4. Additionally, it has put an emphasis on the illegality of underage drinking. *See, e.g.,* SDCL 35–9–1:

> It is a Class 1 misdemeanor to sell or give for use as a beverage any alcoholic beverage to any person under the age of eighteen years unless it is done in the immediate presence of a parent or guardian or spouse over twenty-one years of age or by prescription or direction of a duly licensed practitioner or nurse of the healing arts for medicinal purposes.

*See also* SDCL 35–9–1.1 (Class 2 misdemeanor when the minor is between eighteen and twenty-one years).

[¶ 39.] The defendants had the power and the duty to abate the nuisance of an underage drinking party. The situation on the Huck property constituted a nuisance as a matter of law. *See* SDCL 35–10–17:

> Any structure, conveyance, or place where alcoholic beverages are manufactured, sold, kept, bartered, given away, found, consumed or used in violation of the laws of the state, relating to alcoholic beverages, and all alcoholic beverages and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance is guilty of a Class 1 misdemeanor.

---

4. One of the concerns associated with underage drinking is the danger of driving in an impaired condition. The defendants may have felt this risk was alleviated by 1) Huck's statement that the gate would be locked to any person who was drinking and trying to leave the premises, and 2) the highway patrol officers who agreed to monitor traffic near the party. However, those "precautions" obviously did not eliminate other persons such as Michael from coming into contact with intoxicated minors. The defendants' reliance on this assurance was questionable because 1) they had never before met Huck, and 2) the gate was unlocked upon Smith's arrival. Additionally, when they returned to investigate the assault on Michael, Huck was asleep, yet the party had not ended.

A nuisance such as this party constitutes a "public" nuisance.[5] *See* SDCL 21–10–3:

A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal. Every other nuisance is private.

[¶ 40.] Failure to act when one has a duty to do so also constitutes a nuisance. SDCL 21–10–1 defines what acts and omissions constitute nuisances:[6]

A nuisance consists in unlawfully doing an act, or *omitting to perform a duty*, which act or omission either:

(1) Annoys, injures, *or endangers the . . . health, or safety of others;*

. . .

(4) In any way *renders other persons insecure in life*, or in the use of property.

(Emphasis added).

[¶ 41.] One present at an underage drinking party is included in the class of persons intended to be protected by the nuisance statutes.[7] Defendants had the power and duty to end this party. Nuisance liability may be imposed on non-owners if they have control over "the instrumentality alleged to constitute the nuisance." 58 AmJur2d *Nuisances* § 117, at 761 (1989). "The person whose duty it is to abate a nuisance should answer for the consequences resulting from its continuance." *Id.* § 118; *cf. Cochrane v. Mayor of City of Frostburgh*, 81 Md. 54, 31 A. 703, 705 (1895) (stating that when a statute confers a power to be exercised for the public good, "the exercise of the power is not merely discretionary, but imperative, and the words 'power and authority' in such case may be construed 'duty and obligation.' ").

[¶ 42.] Moreover, persons at the party came within the "ambit of the risk" created by any negligent failure to act on the knowledge of an illegal party. *See Livingston v. City of Everett*, 50 Wash.App. 655, 751 P.2d 1199, 1201 (1988):

When statutes intend to insure the safety of the public highways, a governmental officer's knowledge of an actual violation creates a duty of care to *all persons and property who come within the ambit of the risk created by the officer's negligent conduct.*

(Emphasis added) (citations omitted). It is usually a matter of time before violence

5. The significance of this party constituting a public nuisance is that the statute narrows the class of persons intended to be protected by its provisions. If it were meant to extend a duty of protection to the public as a whole, it would not make sense to list the three categories of persons to whom it is directed. "[T]his court must assume that the Legislature meant what the statute says and therefore give its words and phrases a plain meaning and effect." *In re Estate of Gossman*, 1996 SD 124, ¶ 6, 555 N.W.2d 102, 104 (citing *Nilson v. Clay County*, 534 N.W.2d 598, 601 (S.D.1995)). SDCL 2–14–1 provides that when construing and giving effect to our statutes, "words used are to be understood in their ordinary sense. . . ." As the plain language of SDCL 21–10–3 states, the persons to be protected are a "community," a "neighborhood," or "any considerable number of persons." Both Smith and Dean testified that there were at least thirty people present at the party, which amounts to a "considerable number of persons."

6. *Cf.* SDCL 9–29–13: "Every municipality shall have power to declare what shall constitute a nuisance and prevent, abate, and remove the same." See also *Wynkoop v. Mayor & City Council of Hagerstown*, 159 Md. 194, 150 A. 447, 449 (1930) ("[W]here the municipality is authorized by the Legislature to abate nuisances, the author-

ity carries with it the duty to exercise it, and where it either fails to adopt such ordinances as may be necessary to the reasonable performance of that duty, or to exercise reasonable diligence in enforcing them when adopted, it will be answerable to any private individual injured as a result of its default.").

7. *See Runkel v. City of New York*, 282 A.D. 173, 123 N.Y.S.2d 485, 489 (1953), where the City of New York was held liable for failing to abate a known nuisance when neighborhood children were injured while playing in a dangerous, abandoned building. The children were found to come within the class of persons intended to be protected by the nuisance statutes. The court relied on N.Y. Mult. Dwell. Law § 309, which defines "nuisance" in part as any public nuisance known at common law and "whatever is dangerous to human life or detrimental to health." See also *Union County v. Hoffman*, 512 N.W.2d 168, 170 (S.D.1994) (analyzing whether mobile home park was a public nuisance by examining its effect on residents of the park). As noted, the Legislature has declared a place where alcohol is used in violation of the laws of the state a nuisance as a matter of law.

erupts at a large party where alcohol is being consumed.[8] Whether the defendants should have acted to protect Michael and other persons present is a question for the jury.

[¶ 43.] Based on the knowledge the defendants possessed after visiting the underage drinking party, there are genuine issues of material fact: 1) whether Michael and others similarly situated were within the class protected under the statutes; 2) whether Michael was a foreseeable plaintiff. As the court noted in *Champagne v. Spokane Humane Society*, 47 Wash.App. 887, 737 P.2d 1279, 1283 (1987), "an entity performing governmental functions may be held liable where the plaintiff demonstrates that an otherwise general duty to the public has focused on the particular plaintiff and the entity breaches that duty." [9]

[¶ 44.] **4. THERE ARE GENUINE ISSUES OF MATERIAL FACT WHETHER DEFENDANTS' FAILURE TO ACT CONSTITUTED A BREACH OF DUTY.**

[¶ 45.] As noted, the defendants had the authority to stop the party. "[P]ersons are generally not liable for failure to act, *but once having acted, [they] must proceed without negligence.*" *Tipton v. Tabor*, 1997 SD 96, ¶ 13, 567 N.W.2d at 358 (*Tipton II* ) (emphasis added). If the jury finds that the defendants possessed actual knowledge of the likelihood of violence breaking out at this party, whether they were *obligated* to act is another question for the jury. *See Andrade*, 391 N.W.2d at 841 ("Actual knowledge of a dangerous condition tends to impose a special duty to do something about that condition."); *see also id.* at 844 (Wahl, J., concurring specially) ("[Defendants] had actual knowledge of a dangerous condition ... such that a special duty was imposed on them to do something about the condition."). Whether a defendant breached a duty and whether his breach resulted in injury to the plaintiff are questions for the jury. *Laber v. Koch*, 383 N.W.2d 490, 493 (S.D.1986).[10]

[¶ 46.] Whether stopping the party would have diminished the risk of harm to Michael and other partygoers is yet another jury question. The conference opinion states that "[f]ailure to diminish harm is not enough." *Supra* ¶ 21 (citing *Tipton II*, *supra* ). It is true that *Andrade* stands for the proposition that failure to *decrease* the risk of harm can

---

**8.** *See Muhlenkort v. Union County Land Trust,* 530 N.W.2d 658, 662 (S.D.1995) ("To establish a duty on the part of the defendant, it must be foreseeable that a party would be injured by the defendant's failure to discharge that duty."); *Mark, Inc. v. Maguire Ins. Agency, Inc.,* 518 N.W.2d 227, 229–30 (S.D.1994) ("Whether a duty exists depends on the foreseeability of injury."); *see also Mid–Western Elec., Inc. v. DeWild Grant Reckert & Assocs. Co.,* 500 N.W.2d 250, 254 (S.D.1993) ("We instruct trial courts to use the legal concept of foreseeability to determine whether a duty exists."); *Champagne v. Spokane Humane Soc'y,* 47 Wash.App. 887, 737 P.2d 1279, 1283 (1987) (noting that the "privity" necessary to impose liability despite the public duty doctrine refers to the relationship between the entity and any reasonably foreseeable plaintiff); *Wytupeck v. City of Camden,* 25 N.J. 450, 136 A.2d 887, 894 (1957) (holding city responsible for injuries to minor and noting that the relationship between the parties is founded upon the foreseeability of harm to the person in fact injured) (paraphrasing Judge Cardozo's writing in *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928)).

**9.** The jury can also consider the defendants' resources and its resource allocation policy in answering the question whether the defendants owed a duty to Michael and others similarly situated. However, this is really a non-issue under the nuisance statutes because the defendants had the opportunity to stop the party at *no cost* by assessing the real estate or suing the owner. SDCL 21–10–6. The public duty rule stems, at least in part, from a concern that individuals could affect the manner in which limited public resources are utilized. As this statute makes clear, the defendants are afforded an opportunity to carry out their duty without depleting *any* resources. Therefore, this concern is not present in a suit brought under the nuisance statutes, and *should be considered* by the jury, *not withheld* from the jury as done by the trial court.

**10.** Ordinarily, the question of whether a duty exists is a question of law for the court. Here, the answer to that question rests upon substantial issues of material fact that are rightfully jury questions. *Swiden Appliance & Furniture, Inc. v. National Bank of SD,* 357 N.W.2d 271, 277 (S.D. 1984); accord *City of Gary v. Odie,* 638 N.E.2d 1326, 1329–30 (Ind.Ct.App.1994) ("Factual questions may be interwoven with the determination of the existence of a relationship, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder.") (citation omitted).

not be the grounds upon which duty is *imposed.* However, *Andrade* goes on to state that failure to decrease the risk of harm "goes to whether, assuming the legal duty exists, it was *breached.*" 391 N.W.2d at 843 (emphasis added). As *Andrade* states, the duty can be established by the knowledge of the dangerous condition. It is axiomatic that questions of breach, proximate cause, and damages are resolved by the jury in all but the rarest of cases.

[¶ 47.] The essence of Gleasons' claim is that violence should have been reasonably anticipated by the defendants, that it became their duty to protect Michael against it, and that their failure to perform that duty was negligence. There is "strong evidence" on three of the four factors, which is more than

*Tipton I,* 538 N.W.2d at 787 or *Cracraft v. City of St. Louis Park,* 279 N.W.2d 801 (Minn.1979), require. Since resolution of this action hinges on the jury's determination of disputed factual issues, i.e., whether the defendants had actual knowledge of the likelihood of violence, and if so, whether they breached a duty by not acting, summary judgment was improper. We should reverse and remand for trial on the merits.